**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**AT MEMPHIS**

| | |
|---|---|
| **PROTECTIVE INSURANCE COMPANY** | ) ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | )    **No. _____** ) |
| **C&K TRUCKING LLC, RONALD D. BLACK, and NORFOLK SOUTHERN RAILWAY COMPANY,** | ) ) ) ) |
| **Defendants.** | ) ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes now the Plaintiff, Protective Insurance Company ("Protective"), pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, and for its Complaint for Declaratory Judgment, alleges as follows:

### I.    THE PARTIES

1.    Protective is a domestic insurance company incorporated under the laws of the State of Indiana and with its principal place of business located at 111 Congressional Blvd., Suite 500, Carmel, Indiana 46032, and is authorized to transact business in the State of Tennessee. Thus, Protective is a citizen and resident of the State of Indiana for purposes of 28 U.S.C. § 1332.

2.    C&K Trucking, LLC ("C&K") is an Illinois limited liability company organized under the laws of the State of Illinois with is principal place of business in Chicago, Illinois. C&K may be served through its registered agent CT Corporation System at 208 So Lasalle St., Suite 814, Chicago, IL 60604. Thus, C&K is a citizen and resident of the State

PR C&K Trucking Thomas Comp DJ 221227

of Illinois for purposes of 28 U.S.C. § 1332.

3.      Norfolk Southern Railway Company ("Norfolk") is a Virginia company organized under the laws of the State of Virginia with its principal place of business located at 650 W Peachtree St NW, Atlanta, GA 30308. Norfolk may be served through its registered agent at 100 Shockoe Slip Fl 2, Richmond, VA 23219-4100. Thus, Norfolk is a citizen and resident of the State of Georgia for purposes of 28 U.S.C. § 1332.

4.      Ronald D. Black is a citizen of the State of Tennessee residing in Shelby County, Tennessee. He may be served with process at 5881 Ridgehill Drive, Memphis, Tennessee 38141.

## II.      VENUE AND JURISDICTION

5.      Protective incorporates by reference the allegations contained in paragraphs 1 through 4.

6.      This case is brought pursuant to the Declaratory Judgment Act as codified in 28 U.S.C. § 2201 and Fed. R. Civ. P. 57. Jurisdiction is proper within this Court pursuant to 28 U.S.C. § 1332 as the parties to this action are citizens and residents of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. The accident giving rise to this lawsuit occurred in Fayette County, Tennessee. In addition, the issues involved in this case arise out of an underlying lawsuit, referenced in more detail below, currently pending in Fayette County, Tennessee, which seeks damages in excess of $75,000.00, as well as an insurance contract with limits in excess of One Million Dollars. Therefore, jurisdiction within the U.S. District Court for the Western District of Tennessee, Western Division, is proper and venue is proper in this Court and in this Division pursuant to 28 U.S.C. §§ 1391 and 123, respectfully.

### III. FACTS

7.     Protective incorporates by reference the allegations contained in paragraphs 1 through 6.

8.     On January 31, 2022, an Amended Complaint was filed by the underlying plaintiff, Jenna W. Thomas, as surviving spouse of Beau Patrick Thomas, deceased, individually, and in her representative capacity as next friend of her minor children, Harrison Beau Thomas and Ollie James Thomas, and Charles "Terry" Vanderford Jr. ("the plaintiff") against C&K, Ronald D. Black ("Black") and Norfolk in the Circuit Court for Fayette County, Tennessee ("the Underlying AC"). A true and exact copy of the Underlying AC is attached hereto as **Exhibit 1.**

9.     The Underlying AC asserted that on November 5, 2020, Black was operating a 2000 Freightliner Tractor attached to a loaded intermodal chassis trailer ("tractor trailer") leased to C&K. Underlying AC, ¶ 18.

10.    At the same time, Beau Patrick Thomas ("Thomas") was in the driver seat of a 2016 Chevrolet Traverse SUV ("the SUV") and Terry Vanderford ("Vanderford") was a passenger in the SUV. Underlying. AC, ¶¶ 13, 14.

11.    The SUV was parked adjacent to a rail tracks, near a rail crossing, facing the trail tracks, at the Rossville intermodal Railyard in Rossville, Tennessee ("the railyard"). Underl. AC, ¶¶ 13-16. The Underlying AC asserted that the SUV was situated to protect the rail crossing. Underlying AC, ¶ 17.

12.    The Underlying AC alleged that Black attempted to cross north of where the SUV was parked, but was blocked by a Norfolk train occupying the track. Underlying AC,

¶¶ 21, 22.

13.     As a result, Black allegedly traveled south on the roadway parallel to the track, back in the direction it had just came from. Underlying AC, ¶ 23.

14.     The Underlying AC asserted that Black drove the tractor trailer toward the track already occupied by the Norfolk train. Underlying AC, ¶ 27. Thus, as Black turned his tractor trailer towards the track, the Norfolk train traveled southbound toward the same rail crossing. Underlying AC, ¶ 28.

15.     The Underlying AC alleged that Black was fully aware of the presence of the moving train on the track, but chose not to stop at the rail crossing. Underlying AC, ¶¶ 31, 32.

16.     It asserted that Black was trying to "beat the train" through the crossing. Underl. AC, ¶ 34. As a result, Black's trailer was struck by the Norfolk train and the overturned trailer landed on the SUV. Underlying AC, ¶¶ 36, 37.

17.     Thomas and Vanderford were in the SUV when the trailer landed on it. Underlying AC, ¶ 39. The Underlying AC asserted that Thomas suffered fatal injuries as a result of the incident and Vanderford suffered physical and mental injures. Underlying AC, ¶ 41.

18.     The Underlying AC asserted causes of action for the following:

- Negligence (against Black);
- Recklessness (against Black);
- Negligent and Reckless Hiring, Training, and Supervision (against C&K);
- Agency and Imputed Liability (Against C&K); and
- Negligence (against Norfolk).

19.     The Underlying Complaint seeks compensatory and punitive damages. See

Underl. AC. ¶ 72.

20.     Black subsequently filed a Third-Party Complaint against Norfolk and Harry Poole ("TPC"). A true and accurate copy of the TPC is attached hereto as **Exhibit 2.**

21.     The TPC asserted that "Norfolk's employees negligently failed to give [Black] an adequate signal to notify him the train was moving or about to move." TPC at 2. As a result, the TPC alleged that Black was struck by Norfolk's locomotive causing the vehicle to flip over. Id. at 3.

22.     The TPC asserted a cause of action for negligence and seeks compensatory damages.

23.     At all times relevant to this incident, Protective issued excess policy number XA-1098-20 ("the policy") for the policy period of August 1, 2020, through August 1, 2021. A true and accurate copy of the policy is attached hereto as **Exhibit 3.**

24.     The policy provided coverage for personal injury liability under Coverage A, but only in accordance with the policy terms and conditions.

25.     Norfolk tendered the lawsuit to Protective, seeking defense and indemnity for the allegations of the Underlying AC under the provisions of the Uniform Intermodal Interchange and Facilities Access Agreement ("the UIIA"), and its alleged status as an additional insured on C&K's policy.  A true and exact copy of the tender letter is attached hereto as **Exhibit 4**.

26.     As of the date of filing this Declaratory Judgment Action, Protective has been defending C&K and Black in the Underlying AC under Reservation of Rights. Protective rejected the tender sent by Norfolk for the reasons explained in more detail below.

## IV.   DECLARATORY RELIEF SOUGHT

27.     Protective incorporates by reference the allegations contained in paragraphs 1 through 26.

28.     Protective avers and alleges that Norfolk is not entitled to defense or indemnity from Protective for the allegations asserted against it in the Underlying AC.

29.     Specifically, Protective alleges and avers that Norfolk does not qualify as a contractual indemnitee under the provisions of the UIIA.

30.     Protective seeks a declaration from this Court that Maryland law will guide any assessment of contractual and extra-contractual obligations, including the issue of whether Norfolk qualifies as a contractual indemnitee, under the UIIA. See e.g., Yang Ming Marine Transp. Corp. v. Intermodal Cartage Co., 685 F. Supp. 2d 771 (W.D. Tenn. 2010).

31.     The UIIA contained the following indemnity obligation under Section F.4:

a. Subject to the exceptions set forth in Subsection (b) below, Motor Carrier [C&K] **agrees to defend, hold harmless and fully indemnify the Indemnitees** [Norfolk] (without regard to whether the Indemnitees' liability is vicarious, implied in law, or as a result of the fault or negligence of the Indemnitees), **against any and all claims, suits, loss, damage or liability, for bodily injury, death and/or property damage** (other than cargo loss, damage, or delay unrelated to a commercial motor vehicle accident involving the Motor Carrier or theft of the cargo during the Interchange Period), including reasonable attorney fees and costs incurred in the defense against a claim or suit, or incurred because of the wrongful failure to defend against a claim or suit, or in enforcing subsection F.4 (collectively, the "Damages"), **caused by or resulting from the Motor Carrier's: use or maintenance of the Equipment during an Interchange Period; and/or presence on the Facility Operator's premises**.

b. Exceptions: **The foregoing indemnity provision shall not apply to the extent Damages: (i) occur during the presence of the Motor Carrier on the Facility Operator's premises and are caused by or result from the negligent or intentional acts or omissions of the Indemnitees, their**

**agents, employees, vendors or third party invitees** (excluding Indemnitor); or (ii) are caused by or result from defects to the Equipment with respect to items other than those set forth in Exhibit A, unless such defects were caused by or resulted from the negligent or intentional acts or omissions of the Motor Carrier, its agents, employees, vendors, or subcontractors during the Interchange Period.

(Emphasis added).

32.    Under paragraph (b) stated above, this indemnity provision will not apply to the extent "damages" occur during the presence of C&K on the Facility Operator's premises and are caused by or result from the negligent or intentional acts or omissions of the indemnities, their agents, employees, vendors or third-party invitees. Protective alleges and avers that since the Underlying AC and TPC assert that Norfolk was negligent and at fault for the incident, there is no indemnity obligation under this provision.

33.    Therefore, Protective contends that it owes no defense or indemnity obligations to Norfolk because it does not qualify as a contractual indemnitee under the UIIA and thus, Protective properly rejected Norfolk's tender as to its status as an indemnitee.

34.    In addition, Protective alleges and avers that Norfolk does not qualify as an additional insured under the UIIA.

35.    The UIIA imposed the following insurance requirements upon C&K:

6. Insurance: To the extent permitted by law, Motor Carrier shall provide the following insurance coverages in fulfillment of its legal liability and obligations contained in this Agreement:

a. A commercial automobile insurance policy with a combined single limit of $1,000,000 or greater, insuring all Equipment involved in Interchange including vehicles of its agents or contractors; said insurance policy shall be primary to any and all other applicable insurance and **shall name the Provider as additional insured. The extent of Providers' additional insured status is limited to the provisions of Section F.4 hereof.**

(emphasis added).

36.    Under this provision, the UIIA obligated C&K to name the provider, Norfolk, as an additional insured on the policy. However, the UIIA specifically provided that the extent of Norfolk's additional insured status was limited to the provisions of Section F.4, which is the indemnity provision discussed above.

37.    Since the Underlying AC and TPC asserted fault against Norfolk for the incident, Protective alleges and avers that Norfolk does not qualify as an additional insured under the UIIA. See e.g. In re Horizon, 470 S.W.3d 452, 465, 58 Tex. Sup. Ct. J. 330 (2015) (the Court held that a contract may be reasonably construed as extending the insured's additional insured only to the extent of the risk the insured agreed to assume).

38.    Accordingly, Protective asserts that it owes no indemnity or defense to Norfolk because it does not qualify as an additional insured under the UIIA and thus, Protective properly rejected Norfolk's tender pursuant to its status as an additional insured.

39.    In addition, Protective alleges and avers that it owes no defense or indemnity obligation to Norfolk under the policy. The policy's insuring agreement provided:

> The Company hereby agrees to indemnify the **named or related insured** for **ultimate net loss,** less the **self-retention,** and subject to the limit of indemnity, which the **named or related insured** has or may by law become liable to pay and has paid to any person or persons as **damages**, or for which loss has been incurred under Coverages F & G, as the result of an **occurrence** arising out of **trucking operations** or **brokerage operations:**

40.    Protective provides coverage to the insured for any ultimate net loss less the self-retention which the insured may by law become liable to pay as damages. Thus,

Protective shall pay any amount exceeding the self-retention limit up to the limit of coverage but only if (1) C&K became obligated under the indemnity agreement of the UIIA to provide indemnity for "Damages" to Norfolk or (2) Norfolk is found to be an additional insured.

41.     While Norfolk was added to the policy as an additional insured under Endorsement No. 15, the policy imposes an additional limitation as to additional insureds, consistent with the UIIA:

> M. **"insured"**: Each of the following is an **insured** to the extent set forth below:
>
> (5) The **"additional insured(s)"** as designated in the endorsements and/or certificates issued by the Company. The **additional insured(s)** shall be indemnified under this contract only to the extent that the **named insured** or **related insured** is obligated by a **covered contract** to reimburse, hold harmless or indemnify the **additional insured(s)**. Indemnification under this contract for such **additional insured(s)** shall also be subject to all terms, definitions, conditions and exclusions of this contract. The **named insured** or **related insured** as designated by the Company shall pay all amounts payable to or on behalf of the **additional insured(s)** as and when requested by the Company and shall be entitled to reimbursement for **ultimate net loss** in excess of its self**-retention** as provided by this contract;

See Endorsement No. 15.

42.     Even if Norfolk would be considered an "insured", it would only be to the extent that the Named Insured is obligated by a "covered contract" to reimburse, hold harmless or indemnify the additional insured. Since C&K is not obligation by a "covered contract" to reimburse, hold harmless or indemnify Norfolk, it does not qualify as an "insured."

43.     Further, the policy provided that with respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site listed in the Schedule below (Norfolk is listed in the Schedule) **EXCESS CONTRACT**, **DEFINITIONS, E. "covered contract",** is replaced by the following:

PR C&K Trucking Thomas Comp DJ 221227                    9

(6) That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for **personal injury** or **property damage** to a third person or organization. Tort liability means a liability that would be imposed by law in absence of any contract or agreement.

44.    The UIIA would be a covered contract under paragraph E.6, but only to the extent that C&K is obligated by the indemnity agreement to reimburse, hold harmless or indemnify the Norfolk. As explained above, since the Underlying AC and TPC assert that Norfolk was negligent in the accident, meaning that C&K is not obligated to indemnify Norfolk, Protective avers that Norfolk does not qualify as an additional insured under the policy.

45.    Accordingly, Protective seeks a declaration from this Court that Norfolk does not qualify as a contractual indemnitee or an additional insured under the UIIA. In addition, Norfolk does not qualify as an insured under the policy because the Underlying AC and TPC asserted that Norfolk was negligent in the incident. Thus, Protective requests a declaration from the Court that Protective properly disclaimed coverage to Protective.

46.    Protective further relies upon all other language, provisions, terms, conditions, and exclusions of the policy in this Declaratory Judgment Action.

**WHEREFORE**, **premises considered,** Protective prays as follows:

1.    That the Defendants be required to appear and answer herein;

2.    That this Court adjudicate and declare that Maryland law will guide any assessment of contractual and extra-contractual obligations under the UIIA;

3.    That this Court adjudicate and declare that Norfolk does not qualify as a contractual indemnitee or additional insured under the UIIA for the allegations of or

damages sought in the Underlying AC and TPC;

4.    That this Court adjudicate and declare that Protective is not obligated to defend or indemnify Norfolk under the policy for any and all damages arising out of the Underlying AC and TPC;

5.    That this Court adjudicate and declare that Protective properly rejected Norfolk's tender;

6.    That the costs of this action be assessed against the Defendants; and

7.    For such further legal and equitable relief as this Court deems just and proper.

Respectfully submitted,


_s/Hannah J. Leifel_____
**PARKS T. CHASTAIN**
Registration No. 13744
DIRECT:  (615) 630-7717
(615) 256-8787, Ext. 114
pchastain@bkblaw.com
**HANNAH J. LEIFEL**
Registration No. 038632
DIRECT: (615) 630-7722
(615) 256-8787, Ext. 152
hleifel@bkblaw.com
Attorneys for Plaintiff, Protective Insurance Company

**BREWER, KRAUSE, BROOKS, CHASTAIN & MEISNER, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN  37228

PR C&K Trucking Thomas Comp DJ 221227