# EXHIBIT 3

 **PROTECTIVE** I N S U R A N C E

**111 Congressional Blvd., Suite 500 | Carmel, IN 46032**

Subject to the Terms and Conditions attached to and forming a part hereof, hereby agrees to indemnify

No.  XA-1098-20

  XA-1042-18
Renewal of Number

## DECLARATIONS

**ITEM 1**
  (a) **NAMED INSURED**:

C&K Trucking, LLC
(Also see Endt. No. 2 for **Related Insureds**)

  (b) ADDRESS:

6205 West 101st Street
Chicago Ridge, IL  60415

**ITEM 2**
  Contract Period:

August 1, 2020 to August 1, 2021,
12:01 A.M., Standard Time at the address
of the **Named Insured** as stated herein.

**ITEM 3**
  Coverages Provided:

| | Included | Not Included |
|---|---|---|
| Coverage A **(Personal Injury Liability)** | X | |
| Coverage B **(Property Damage Liability)** | X | |
| Coverage C **(Uninsured & Underinsured Motorists)** | SEE ENDORSEMENT NO. 5 | |
| Coverage D **(Personal Injury Protection)** | SEE ENDORSEMENT NO. 5 | |
| Coverage E **(Cargo Legal Liability)** | | X |
| Coverage F **(Physical Damage-Comprehensive)** | | X |
| Coverage G **(Physical Damage-Collision)** | X | |
| Coverage H **(Workers' Compensation/ Occupational Disease** where qualified as a self-insured**)** | | X |
| Coverage I   **(Employers Liability)** | X | |

**ITEM 4**
  Limit of Indemnity:

███████     combined single limit per **occurrence** less **self retention** for Coverages A, B, I and Coverages C and D only if these coverages have not been waived or rejected by the **insured**; and if not waived or rejected, only to the limit selected by the **insured**, combined, and,

███████     combined single limit per **occurrence** less **self retention** for Coverage G.

Subject to an aggregate limit of

███████     as respects **general liability** and **employers liability** (as respects **occupational disease**) exposures.

PE-XS-101
Revision 9 (04/08)

 **PROTECTIVE**
I N S U R A N C E

**111 Congressional Blvd., Suite 500 | Carmel, IN 46032**

Subject to the Terms and Conditions attached to and forming a part hereof, hereby agrees to indemnify

No.    XA-1098-20

## DECLARATIONS (Page 2)

**ITEM 5**
Self Retention:                    ██████ per **occurrence** for Coverages A, B, C, D, G and I
combined.

**ITEM 6**
Deposit:                    $

**ITEM 7**
Premium Rate:                    $        per 100 **miles**
                    $        per $100 of **brokerage operations gross receipts**

**ITEM 8**
Estimated Annual
Miles:                    37,000,000
Gross Receipts:                    $20,000,000 – **brokerage operations**

**ITEM 9**
Endorsements at
Inception:                    1-21

_Sally Wignall_
Secretary

_[signature]_
President

Countersigned at ____Carmel, IN____ this __1st__ day of____August____, 20_20_

_[signature]_
Authorized Agent

PE-XS-101
Revision 9 (04/08)

## <u>EXCESS CONTRACT</u>

This is an excess contract, and it is excess of the **self retention,** as set forth in the Declarations.  The Protective Insurance Company (hereinafter called "the Company") is the indemnitor and agrees with the **insured** named in the Declarations and made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the Limits of Indemnity, Exclusions, Conditions and other terms of this contract, as follows:

## INDEMNITY AGREEMENTS

The Company hereby agrees to indemnify the **named or related insured** for **ultimate net loss,** less the **self retention,** and subject to the limit of indemnity, which the **named or related insured** has or may by law become liable to pay and has paid to any person or persons as **damages**, or for which loss has been incurred under Coverages F & G, as the result of an **occurrence** arising out of **trucking operations** or **brokerage operations:**

**COVERAGE (A)**      for **personal injury liability**;

**COVERAGE (B)**      for **property damage liability;**

**COVERAGE (C)**      for **uninsured** and **underinsured motorists;**

**COVERAGE (D)**      for **personal injury protection;**

**COVERAGE (E)**      for **cargo legal liability;**

**COVERAGE (F)**      for **physical damage comprehensive** loss to **covered vehicles;**

**COVERAGE (G)**      for **physical damage collision** loss to **covered vehicles;**

**COVERAGE (H)**      for **Workers' Compensation** and **Occupational Disease** in those states where the **insured** has qualified and remains qualified as a self-insurer;

**COVERAGE (I)**      for **Employers Liability.**

PROVIDED ALWAYS THAT it is expressly agreed that no liability shall attach to the Company**,** except under Coverages F & G, until the **named insured** or **related insured** has paid the **ultimate net loss.**

Regardless of the number of persons and organizations who are **insureds** under this contract and regardless of the number of coverages involved and/or the number of claims made and suits brought in connection therewith, the total limit of the Company's indemnity as a result of an **occurrence** for all **insureds** combined shall not exceed the Limit of Indemnity as stated in Item 4 of the Declarations.  Further, the total limit of the Company's indemnity as a result of all **occurrences** arising out of **general liability** and **employers liability** (as respects **occupational disease**) exposures shall not exceed the aggregate limit stated in Item 4 of the Declarations. This coverage shall apply separately to each **insured,** except with respect to the Company's limits of indemnity as stated in the Declarations.  More than one **insured** shall not serve to increase the Company's limits of indemnity for all **insureds** combined over that stated in Item 4 of the Declarations.

## EXCLUSIONS

This contract shall not apply:

A.  To punitive or exemplary **damages** where insurance thereof or indemnity therefore is prohibited by law;

B.  To any liability or loss for which the **insured** is obligated to pay **damages** by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for **damages** assumed in a contract or agreement that is a **covered contract**;

C.  Under Coverage (A) to any obligation for which the **insured** or any of its insurers may be held liable under any **workers' compensation**, unemployment compensation, disability benefits or similar law, provided, however, that this exclusion does not apply to liability of others assumed by the **insured** under a **covered contract**;

D.  Under Coverage (A) to bodily injury (including death resulting therefrom) to any employee of the **insured** arising out of and in the course of employment by the **insured**;

E.  Under Coverage (I) to **personal injury** (including death resulting therefrom) to an employee where the **insured** has abrogated its common law defense under any **Workers' Compensation** or **Occupational Disease** law by rejection thereof, or by failure to purchase **Workers' Compensation** insurance, or otherwise;

F.  Except as provided under Coverages (E), (F) and (G), to injury to or destruction of or loss of:

    (1)  property owned or occupied by or rented to the **insured** or

    (2)  property in the care, custody or control of the **insured**;

G.  Under Coverages (A) and (B), to any liability arising out of the existence, ownership, maintenance, operation, use, loading or unloading of aircraft owned by, loaned to, leased to, rented to or chartered by or on behalf of the **insured**, or watercraft owned by the **insured**;

H.  Under Coverages (A) and (B) to:

    (1)  any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, spillage, release, migration or escape of smoke, vapors, soot, fumes, acids, alkalis, asbestos, toxic or non-toxic chemicals, solids, liquids or gasses, waste materials, irritants, contaminants or **pollutants** of any kind, nature or description into or upon the **environment**.  This exclusion further applies to

    (2)  any loss, cost, or expense arising out of any court-ordered, governmental or private direction or request that the **insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any of the above;

I.  To any liability or loss as a result of or arising out of discrimination in any form, whether intentional or unintentional, including but not limited to discrimination based on a person's sex, sexual preference, marital status, race, creed, religion, national origin, age, physical capabilities, characteristics or condition or mental capabilities or condition;

J.  To **personal injury** arising out of:

    (1)  humiliation, mental injury or mental anguish directly or indirectly related to employment of any person or persons by any **insured**;

    (2)  refusal to employ;

    (3)  termination of employment;

    (4)  coercion, demotion, evaluation, reassignment, discipline, defamation or other employment-related practices, policies, acts or omissions; or

    (5)  consequential **personal injury** as a result of (1) through (4) above.

    This exclusion applies whether the **insured** may be held liable as an employer or in any other capacity and to any obligation to share **damages** with or repay someone else who must pay **damages** because of the injury;

K.  Under Coverages (F) and (G) to any liability or loss resulting from manufacturer's defects or to damage which is due and confined to:

    (1)  wear and tear, or

    (2)  freezing, or

    (3)  mechanical or electrical breakdown or failure, unless such damage is the result of other loss covered by this contract;

L.  To any liability of or loss to the **insured** directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or naturalization or requisition or destruction or damage to property by or under the order of any government or public or local authority;

M.  To any liability or loss arising out of any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity;

N.  Under Coverages (A) and (B) to **personal injury** or **property damage** arising from the manufacture or sale of alcoholic beverages for which any **insured** may be held liable by reason of:

    (1)  causing or contributing to the intoxication of any person, or

    (2)  the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol, or

    (3)  any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages;

O.  To loss of use of tangible property which has not been physically injured or destroyed resulting from a delay in or lack of performance by or on behalf of the **insured** of any contract or agreement;

P.  To any liability or loss which the **insured** has assumed under any contract; if such injury, damage or loss occurred prior to the effective date of the contract;

Q.  For claims, suits, actions, or proceedings brought by the **named insured,** or any **related insured,** against the **named insured, related insured** or **additional insured**;

R.  To any liability of the **named insured** or **related insured** or officers or directors of the **named insured** or **related insured** for loss, **damages**, claims or suits by stockholders or their representatives for:

    (1)  Actual or alleged errors of omission or commission;

    (2)  Fraudulent acts;

    (3)  Errors of judgment;

    (4)  Breach of fiduciary duty;

committed or alleged to have been committed by said **named insured** or **related insured** or officers or directors of the **named insured** or **related insured** in their performance or failure to perform duties, obligations and responsibilities as officers and directors;

S.   To **personal injury** or **property damage**, or to economic loss, diminution of property, abatement costs, or any other loss, cost or exposure including equitable relief, in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.  This exclusion also applies to any fees, costs, or expenses of any nature whatsoever in the investigation or defense of any claim or suit arising out of or involving asbestos, asbestos fibers or any product containing asbestos or asbestos fibers;

T.   Under Coverages (A) and (B) to **personal injury** or **property damage;**

(1)   for which an **insured** is an insured under a nuclear energy liability policy of the:

(a)   Nuclear Energy Liability Insurance Association; and/or

(b)   Mutual Atomic Energy Liability Underwriters; and/or

(c)   Nuclear Insurance Association of Canada;

or would be an **insured** under that policy except for its termination due to its exhaustion of its limit of liability;

(2)   Resulting from the **hazardous properties** of **nuclear material** and as respects which;

(a)   any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any amendatory law thereof, or

(b)   the **insured** is, or had this contract not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

(3)   resulting from the **hazardous properties** of **nuclear material** if;

(a)   the material:

(1)   is at any **facility** owned by, or operated by or on behalf of, an **insured** or

(2)   has been discharged or dispersed therefrom**;**

(b)   the nuclear material is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured; or**

(c)   the **personal injury** or **property damage** arises out of the furnishing by an **insured of** services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of a **nuclear facility,** but if such facility is located in the United States of America, its territories, or possessions or Canada, this exclusion (c) applies only to **property damage** to any such nuclear facility and any property threat.

PE-XS-100                                                                                                Page 4 of 13
Revision 9.8 (10/10)

## DEFINITIONS

A.  **"advertising injury"** means injury arising out of one or more of the following offenses:

    (1) Oral or written publication of material that slander or libels a person or organization or disparages a person or organization's goods, products or services;

    (2) Oral or written publication or material that violates a person's right of privacy;

    (3) Misappropriation of advertising ideas or style of doing business; or

    (4) Infringement of copyright, title or slogan;

B.  **"brokerage operations"** means those activities necessary to the business of arranging for the transportation of property by vehicle for hire when such transportation is done by others, operating under their own ICC or PUC permits, at the direction of the insured;

C.  **"cargo legal liability"** means liability for loss of, or damage to, property of others accepted for transportation by the **insured** pursuant to a bill of lading, shipping contract, shipping receipt or transportation agreement;

D.  **"costs"** means court costs, post judgment interest upon awards and judgments, and investigation, adjustment and legal expenses incurred by the **insured**, but does not include fines or statutory penalties, office expenses of the **insured**, salaries and expenses of employees or fees of counsel, except defense counsel, of the **insured**;

E.  **"covered contract"** means:

    (1) A lease of premises;

    (2) A sidetrack agreement;

    (3) An easement or license agreement in connection with vehicle or pedestrian private railroad crossing at grade;

    (4) Any other easement agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    (5) An indemnification of a municipality as required by ordinance, except in connection with work for a municipality;

    (6) An elevator maintenance agreement;

    (7) That part of any other contract or agreement pertaining to the **insured's trucking operations** under which any **insured** assumes the tort liability of another to pay **damages** because of **personal injury** or **property damage** to a third person or organization, if the contract or agreement is made prior to the **personal injury** or **property damage**. Tort liability means a liability that would be imposed by law in absence of any contract or agreement; or

    (8) If coverage (E), **cargo legal liability**, is provided under this contract, then the definition of **covered contract** shall also include that part of any other contract or agreement pertaining to the **insured's business** under which any **insured** assumes the liability of another to pay **damages** because of **cargo legal liability** if the contract or agreement is made prior to the **occurrence** resulting in **cargo legal liability**;

F. **"covered vehicle"** means a land motor vehicle, trailer or semi-trailer, designed for use on public roads, including its equipment and other equipment permanently attached thereto, which is either:

   (1) owned by the **insured,** or

   (2) not owned by the **insured** while in his possession under a written agreement wherein he assumes liability for loss or damage thereto while in his possession;

G. **"damages"** means a monetary judgment or settlement paid by the **insured** and does not include fines or statutory penalties;

H. **"Employers Liability"** means liability by law other than liability applicable under **Workers' Compensation** or **Occupational Disease** laws for **damages** on account of **personal injuries** and **occupational diseases** sustained by employees of the **insured** and engaged in **trucking operations** of the **insured**;

I. **"environment"** means the land, atmosphere or any water course or body of water, including aquifers and ground water.

J. **"general liability"** means all **personal injury** and/or **property damage**, which does not arise from the operation or use of one or more **licensed motor vehicles**.

K. **"gross receipts"** means the total amount which the **named insured** and **related insured**(s) receive or are entitled to receive for their **trucking operations** and **brokerage operations** during the contract period regardless of whether the **insured** or any other carrier originates the shipment or transportation. **Gross receipts** includes the total amount received from renting equipment, with or without drivers, to anyone. **Gross receipts** does not include:

   (1) amounts the **insured** pays (other than for **brokerage operations**) to railroads, steamship lines, airlines and other motor carriers operating under their own ICC or PUC permits;

   (2) advertising revenue;

   (3) taxes which the **insured** collects as a separate item and remits directly to a governmental division;

   (4) C.O.D. collections for cost of mail or merchandise including collection fees;

   (5) warehouse storage fees;

   (6) fuel surcharges;

L. **"hazardous properties"** include radioactive, toxic or explosive properties;

M. **"insured"**: Each of the following is an **insured** to the extent set forth below:

   (1) The **"named insured"** as designated in the Declarations;

   (2) The **"related insured(s)",** which shall include, if listed in the endorsements, the parent company or other company owning a controlling interest in the **named insured** and any subsidiary company of or company otherwise controlled by the **named insured's** ownership. If the **related insured** is a parent or other company owning a controlling interest in the **named insured,** then such **related insured** shall be indemnified only if its liability is solely caused by its ownership interest in the **named insured**. All other **related insureds,** if listed in the endorsements, shall be indemnified for their **trucking operations** as if a **named insured** under this contract;

   Only for their **trucking operations**, **related insured(s)** shall also include:

   any subsidiary or owned or controlled company of the **named insured** or **related insured** created or acquired subsequent to the inception date of this contract, but coverage hereunder will not apply:

(a)    to liability which is as a result of an **occurrence** including continuous or repeated exposure to the same general harmful conditions happening prior to the date of such creation or acquisition.

(b)    for a period greater than ninety days from the date of such creation or acquisition unless endorsed hereon;

(3)  If the **named** or **related insured** is a partnership or joint venture, any partner or member thereof, but only with respect to his/her liability as such;

(4)  If the **named** or **related insured** is a corporation or limited liability company, the board of directors and the officers appointed by the board of directors while acting within the scope of their duties as such;

(5)  The **"additional insured(s)"** as designated in the endorsements and/or certificates issued by the Company. The **additional insured(s)** shall be indemnified under this contract only to the extent that the **named insured** or **related insured** is obligated by a **covered contract** to reimburse, hold harmless or indemnify the **additional insured(s)**. Indemnification under this contract for such **additional insured(s)** shall also be subject to all terms, definitions, conditions and exclusions of this contract. The **named insured** or **related insured** as designated by the Company shall pay all amounts payable to or on behalf of the **additional insured(s)** as and when requested by the Company and shall be entitled to reimbursement for **ultimate net loss** in excess of its **self retention** as provided by this contract;

N.  **"licensed motor vehicle"** means a truck, truck-tractor, trailer, semi-trailer, service vehicle or private passenger vehicle, licensed for road use, which is used in the **insured's trucking operations**.

O.  **"nuclear facility"** means

(1)  any nuclear reactor,

(2)  any equipment or device designed or used for

(a)    separating the isotopes of uranium or plutonium,

(b)    processing or utilizing **spent fuel**, or

(c)    handling, processing or packaging **waste**,

(3)  any equipment or device used for the processing, fabricating or alloying of special **nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(4)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste,** and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

P.  **"nuclear material"** means source material, special nuclear material or byproduct material;

Q.  **"occupational disease"** is any abnormal condition that fulfills all of the following conditions:

(1)  it is not traceable to a definite compensable accident occurring during the employee's present or past employment;

(2)  it has been caused by exposure to a disease producing agent or agents present in the worker's occupational environment; and

(3)  it has resulted in disability or death;

R.  **"occurrence":**

Under Coverages A, B, C, D, E, F, G, and I, **occurrence** means an accident, including injurious exposure to conditions, which results, during the contract period, in **personal injury,** or **property damage,** including damage to or loss of cargo transported by the **insured** or damage to or loss of **covered vehicles,** neither expected or intended from the standpoint of the **insured.**  All **personal injury** and **property damage** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **occurrence;**

Under Coverage H, as applied to bodily injuries, **occurrence** shall mean "accident."  **Occupational disease** sustained by each employee shall be deemed to be a separate **occurrence.**  As respects **occupational disease**, the **occurrence** shall be deemed to take place on the date upon which the employee ceases work as a result of such **occupational disease**;

S.  **"personal injury"** means:

(1)  bodily injury, sickness or disease sustained by a person, including death at any time resulting therefrom;

(2)  false arrest, detention, imprisonment, malicious prosecution;

(3)  the wrongful entry or eviction, or other invasion of the right of private occupancy;

(4)  the oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

(5)  oral or written publication of material that violates a person's right of privacy; or

(6)  **advertising injury**;

This insurance does not apply to **personal injury** or **advertising injury**:

(a)  arising out of oral or written publication material, if done by or at the direction of the **insured** with knowledge of its falsity;

(b)  arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(c)  arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **insured**; or

(d)  for which the **insured** has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages the **insured** would have in absence of the contract or agreement.

This insurance does not apply to **advertising injury** arising out of:

(a)  breach of contract, other than misappropriation of advertising ideas under any implied contract;

(b)  the failure of goods, products or services to conform with advertised quality or performance;

(c)  the wrong description of the price of goods, products or services;

(d)  an offense committed by an **insured** whose business is advertising, broadcasting, publishing or telecasting.

T.  **"personal injury protection"** means liability for various prescribed benefits under applicable no-fault laws as required by such laws and as specified in the endorsements;

U. **"physical damage"** means actual or direct loss of or damage to tangible property.  **Physical Damage** does not include loss of use, loss of profits or any other consequential damage;

V. **"physical damage - collision"** means:

    (1)    collision of a **covered vehicle** with another object; or

    (2)    upset of a **covered vehicle**;

W. **"physical damage - comprehensive"** means loss to a **covered vehicle** from any cause except **collision;** but for the purpose of this coverage, breakage of glass and loss caused by missiles, falling objects, fire, theft or larceny, windstorm, hail, earthquake, explosion, riot or civil commotion, malicious mischief or vandalism, water, flood, or colliding with a bird or animal, shall not be deemed loss caused by **collision;**

X. **"pollutants"** means smoke, vapors, fumes, alkalis, toxic or non-toxic chemicals, solids, liquids or gases, waste materials, irritants, contaminants, pollutants or any other substance which by itself or in combination with other substances can cause injury to persons, property or the **environment;**

Y. **"property damage"** means:

    (1)  physical injury to or destruction of tangible property which occurs during the contract period, including the loss of use thereof at any time resulting therefrom, and

    (2)  loss of use of tangible property which has not been physically injured or destroyed, provided such loss is caused by an **occurrence** during the contract period;

Z. **"self retention"** means the amount, as specified in the Declarations, of the **ultimate net loss** to be paid solely by the **insured** and not subject to reimbursement by the Company.  The **insured's self retention** shall not be reduced or eliminated by insurance, salvage, contribution, recoveries or reimbursements of any type from any source except **Employers Liability** insurance purchased by the **insured;**

AA. **"spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

BB. **"trucking operations"** means those activities necessary to the business of transporting property by vehicle for hire;

CC. **"ultimate net loss"** means the total sums paid as **damages** in settlement of a claim or in satisfaction of a judgment, including pre-judgment interest, for which the **insured** is legally liable, and for losses otherwise incurred for which coverage is provided under this contract after making deductions for all other recoveries, salvages and insurance (whether recoverable or not), contributions and reimbursements.  However no deduction shall be made for recoveries by or reimbursements to the **insured** from other **Employers Liability** insurance purchased by the **insured**.  **Ultimate net loss** shall not include **costs;**

DD. **"uninsured** and **underinsured motorists"** means liability for bodily injury or **property damage** caused by an **uninsured** or **underinsured motorist** as required by law, unless rejected, and as defined and specified in the endorsements;

EE. **"waste"** means any waste material,

    (1)  containing byproduct material and

    (2)  resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph (a) or (b) thereof.

FF. **"workers' compensation"** means benefits payable under the Workers' Compensation Act or Occupational Disease Act of any state where the **insured** has duly qualified and remains qualified as a self-insurer;

## CONDITIONS

A. **Payment of Costs:**

All **costs** shall be paid by the **insured**.  After payment of the **ultimate net loss,** the **costs** incurred by the **insured** shall be apportioned as follows:

(1) If the **ultimate net loss** is equal to or less than the **insured's self retention**, then no **costs** shall be payable by the Company;

(2) If the **ultimate net loss** exceeds the **insured's self retention**, then the Company shall reimburse the **insured** for the **costs** incurred by the **insured** in the ratio that the Company's proportion of the **ultimate net loss** bears to the whole amount of such **ultimate net loss.**

B. **Premium:**

All premiums for this contract are computed in accordance with the Company's rules, rates, rating plans, premiums and minimum premiums applicable to the coverages afforded.

The deposit premium stated in the Declarations is an advance premium only.  Upon termination of this contract, the earned premium shall be computed and the deposit premium returned to the **insured** less any earned premium due the Company.

No later than twenty (20) days past the end of each month or other reporting period approved by the Company throughout the duration of this contract, the **insured** shall report the total **gross receipts** recorded during that month or period and pay the premium earned thereon at the premium rate prevailing during that month or period.

C. **Inspection and Audit:**

The Company shall be permitted but not obligated to inspect the **insured's** property and operations at any time.  Neither the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the **insured** or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The Company may examine and audit the **insured's** books and records at any time during the contract period and extensions thereof and within three years after the final termination of this contract, as far as they relate to the subject matter of this insurance.

The Company may audit and inspect all claims against the **insured** occurring during the contract period, but such audit and inspection shall not relieve the **insured** from the Notice Conditions of the contract.

D. **Payment of Claims – Comprehensive or Collision**

Under Coverages (F) and (G), the maximum amount that may be included in **ultimate net loss** shall be the lesser of the actual cash value of the damaged or stolen property at the time of the loss or the cost of repairing or replacing the damaged or stolen property with other of like kind and quality.  At its option, the Company may pay for, repair or replace damaged or stolen property; or return the stolen property at its expense.

E.  **Notice of Occurrence:**

The **insured** shall immediately give written notice to the attention of the Excess Claims Supervisor of the Company, or its authorized representative, following any **occurrence** which might cause liability to the **insured** for claims, **damages** or loss in an aggregate amount in excess of 50% of the **insured's self retention**, including but not limited to claims involving fatality, amputation, spinal cord damage, brain damage, blindness, extensive burns or multiple fractures.  Solely for the purpose of reporting **occurrences,** claims, **damages**, or losses, the **insured** shall consider itself fully and completely liable and solely responsible for such claims, **damages**, or losses which might arise from any **occurrence.**  The **insured** acknowledges that immediate notice is a material condition of this contract and that the Company is prejudiced by delay in receipt of the **insured's** notice.

F.  **Administration of Claims:**

The **insured** shall maintain personnel who are trained, experienced and competent to administer claims against it which might involve amounts in excess of its **self retention.**  Such personnel shall be approved by and be satisfactory to the Company**.**

The **insured** shall fully investigate, settle or defend all claims and shall conduct the defense and appeal in all actions, suits and proceedings commenced against it or the Company if the Company is named as a defendant.

After giving notice of any **occurrence** which might involve amounts in excess of its **self retention**, the **insured** shall give periodic reports of the status of any and all claims or losses and any litigation in connection therewith and shall provide complete copies of all investigation reports, correspondence, legal pleadings and reports of counsel and all other pertinent claim material.  In all matters which might involve an amount in excess of the **insured's self retention,** the **insured** has the duty to act in good faith and with due care with equal considerations for both its own interests and the interests of the Company.  The **insured** shall not commit the Company to any obligation or course of action likely to involve payment by the Company without the Company's consent.  Any payment, agreement or other commitment to pay by the **insured** in excess of its **self retention** without the consent of the Company shall render any obligation of the Company under this contract to reimburse the **insured** null and void.

G.  **Assumption of Administration:**

At any time after any **occurrence** which in the opinion of the Company might involve amounts in excess of the **insured's self retention,** the Company may, at its sole discretion, assume the administration of any claim or any litigation resulting therefrom in whole or in part.  The assumption of administration shall allow the Company to solely control the investigation, defense (including selection of counsel and all matters involving trial preparation) negotiations and settlement or trial of the claim or litigation.

The **insured** shall cooperate in all matters with the Company following its assumption of administration in whole or in part and the assumption shall be deemed to be with the consent and agreement of the **insured.** All **costs** incurred by the Company shall be payable by the **insured** and subject to reimbursement as otherwise provided by this contract.  Following assumption of administration in whole or in part, the Company is fully authorized by the **insured** to act on the **insured's** behalf without limitation including the full authority to authorize, commit or otherwise obligate the **insured** to payment of its **self retention** whether or not payment by the Company in excess of the **insured's self retention** is involved.  The **insured** shall pay all amounts authorized, committed or otherwise obligated by the Company and shall be entitled to reimbursement for **ultimate net loss** in excess of its **self retention** as provided by this contract.

H.  **Action Against the Company:**

No action shall lie against the Company unless, as a condition precedent thereto, the **insured** shall have fully complied with all the terms of this contract.  Nothing contained in this contract shall give any person or organization any right to join the Company as a party or otherwise bring the Company into a lawsuit or legal proceeding asking for **damages** from an **insured** under this contract.

I. **Bankruptcy and Insolvency:**

In the event of the bankruptcy or insolvency of the **insured** or any entity comprising the **insured**, the Company shall not be relieved of its indemnification obligations under this contract.

J. **Insurance:**

If insurance with any insurer is available to the **insured** covering a loss covered hereunder, except insurance purchased to apply in excess of the sum of the **insured's self retention** and limit of indemnity hereunder, the indemnity hereunder shall be in excess of, and not contribute with, such other insurance. If insurance under any other contract(s) of the Company is available to the **insured**, covering a loss also covered hereunder, the Company's total liability shall in no event exceed the greater or greatest limit of indemnity applicable to such loss under this or any other such contract(s).

K. **Subrogation and Salvage:**

The **insured** shall prosecute all claims the **insured** may have against any person, firm or corporation growing out of any **occurrence** resulting in payment of loss by the Company hereunder, and should the **insured** recover any reimbursement from any source whatsoever on account of such loss, the net amount (gross amount of recovery less the **costs** incurred in effecting such recovery) of the recovery as does not exceed the Company's loss shall be paid to the Company.

Should the **insured** have such a claim against any person, firm or corporation growing out of any **occurrence** resulting in the payment of loss by the Company hereunder, which it fails or neglects to enforce within reasonable time, the Company shall be subrogated to all the **insured's** rights of recovery against any person or organization and the **insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The net amount of any recovery shall first be used by the Company to reimburse its loss, and any excess shall be paid to the **insured.**

L. **Changes:**

Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this contract or stop the Company from asserting any rights under the terms of this contract; nor shall the terms of this contract be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

M. **Assignment:**

Assignment of interest under this contract shall not bind the Company until its consent is endorsed hereon; if however, the **insured** shall be adjudged bankrupt or insolvent, this contract shall cover the **insured's** legal representative as **insured**; provided that notice of cancellation addressed to the **insured** named in the Declarations and mailed to the address shown in this contract shall be sufficient notice to effect cancellation of this contract.

N. **Cancellation:**

This contract may be canceled by the **insured** by surrender thereof to the Company, or by mailing the Company written notice stating when thereafter such cancellation shall be effective. This contract may be canceled or non-renewed by the Company by mailing to the **insured** at the address shown in the Declarations of this contract, written notice stating when, not less than thirty (30) days thereafter, or ten (10) days thereafter if cancellation is because of non-payment of premium, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the contract period. Delivery of such written notice either by the **insured** or by the Company shall be equivalent to mailing. If the **insured** cancels or if the Company cancels for non-payment of premium, earned premium shall consist of the premium earned for the period of coverage plus 10% (ten percent) of the anticipated premium for the unexpired term of the contract, calculated by averaging the daily earned premium for the contract term prior to cancellation and applying that daily average to the remaining contract term. If the Company cancels for any reason other than non-payment of premium, earned premium shall be computed pro rata.

Premium adjustment may be made at the time **cancellation** is effected or as soon as practicable thereafter. The return of unearned premium is not a condition precedent to the cancellation of this contract.  The check of the Company or its representative, mailed or delivered, shall be sufficient tender of any refund due the **insured.**

If this contract includes more than one **insured**, cancellation may be effected by the **named insured** for the account of all **insureds;** and notice of **cancellation** by the Company to such **named insured** shall be notice to all **insureds.**  Payment of any unearned premium to such **named insured** shall be for the account of all interests therein.


In Witness Whereof, the Company has caused this contract to be executed and attested, but this contract shall not be valid unless countersigned by a duly authorized representative of the Company.


|  |  |
| --- | --- |
| Secretary | President |

## ENDORSEMENT NO. 1

Named Insured_____C&K Trucking, LLC_____

Contract No.___XA-1098-20___ Contract Period___August 1, 2020/2021___ Effective Date___August 1, 2020___

Issued By_____Protective Insurance Company_____
(Name of Insurance Company)

## FORMS AND ENDORSEMENTS

PE-XS-101    DECLARATIONS

PE-XS-100    EXCESS CONTRACT

PE-XS-172    ENDORSEMENT NO. 1 – FORMS AND ENDORSEMENTS

PE-XS-110    ENDORSEMENT NO. 2 – RELATED INSURED(S)

PE-XS-279    ENDORSEMENT NO. 3 – RELATED INSURED(S) – GENERAL LIABILITY

PE-XS-102    ENDORSEMENT NO. 4 – POLLUTION OR CONTAMINATION

PE-XS-103    ENDORSEMENT NO. 5 – UNINSURED OR UNDERINSURED MOTORIST AND PERSONAL INJURY PROTECTION

PE-XS-105    ENDORSEMENT NO. 6 – POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

PE-XS-104    ENDORSEMENT NO. 7 – EMPLOYEE BENEFITS LIABILITY

PE-XS-274    ENDORSEMENT NO. 8 – CYBER LIABILITY EXCLUSION

PE-XS-108    ENDORSEMENT NO. 9 – MILES DEFINITION

PE-XS-191    ENDORSEMENT NO. 10 – ADDITIONAL INSURED(S) DEFINITION

PE-XS-267    ENDORSEMENT NO. 11 – WAIVER OF SUBROGATION

PE-XS-206    ENDORSEMENT NO. 12 – EXPENSES PART OF LOSS

PE-XS-132    ENDORSEMENT NO. 13 – PRIMARY AND NON-CONTRIBUTORY

PE-XS-288    ENDORSEMENT NO. 14 – CONTRACTURAL LIABILITY – RAILROADS – GEORGIA PACIFIC LLC, GP CELLHOUSE AND THEIR US SUBSIDIARIES

Authorized Agent

PE-XS-288        ENDORSEMENT NO. 15 – CONTRACTURAL LIABILITY – RAILROADS – NORFOLK
                 SOUTHERN RAILWAY COMPANY

PE-XS-288        ENDORSEMENT NO. 16 – CONTRACTURAL LIABILITY – RAILROADS – BNSF RAILWAY
                 COMPANY

PE-XS-288        ENDORSEMENT NO. 17 – CONTRACTURAL LIABILITY – RAILROADS – CSX INTERMODAL
                 TERMINALS, INC.

PE-XS-288        ENDORSEMENT NO. 18 – CONTRACTURAL LIABILITY – RAILROADS – UNION PACIFIC
                 RAILROAD COMPANY

PE-XS-299        ENDORSEMENT NO. 19 – UNIFORM INTERMODAL INTERCHANGE

PE-XS-308        ENDORSEMENT NO. 20 – EXCLUSION – ALL HAZARDS IN CONNECTION WITH
                 DESIGNATED PREMISES

PE-XS-107        ENDORSEMENT NO. 21 – MINIMUM PREMIUM

.

ENDORSEMENT NO. 2

---

Named Insured_____C&K Trucking, LLC_____

Contract No.___XA-1098-20___ Contract
Period____August 1, 2020/2021_____ Effective Date____August 1, 2020_____

Issued By_____Protective Insurance Company_____
(Name of Insurance Company)

---

## RELATED INSURED(S)

C & K Holdings Acquisitions, LLC
A.V. Logistics, LLC
Chicago Ridge Leasing, LLC
SEI Acquisition LLC d/b/a Skyline Express
SEI Acquisition LLC d/b/a Metro Intermodal
SEI Acquisition LLC d/b/a Inland Express
SEI Acquisition LLC d/b/a Liberty Container Express
SEI Acquisition LLC d/b/a American Shippers Dispatch

_____
Authorized Agent

PE-XS-110
Revision 1 (11/11)

ENDORSEMENT NO. 3

Named Insured_____C&K Trucking, LLC_____

Contract No.___XA-1098-20____Period____August 1, 2020/2021_____Effective Date____August 1, 2020_____

Issued By_____Protective Insurance Company_____

(Name of Insurance Company)

## RELATED INSURED(S) – GENERAL LIABILITY

CKT Properties, LLC

is hereby included as a **Related Insured**, but only as respects **General Liability**

_____
Authorized Agent

PE-XS-279
Revision 1 (12/15)

## ENDORSEMENT NO. 4

Named Insured _____ C&K Trucking, LLC _____

Contract No. __XA-1098-20__ Contract Period ___August 1, 2020/2021___ Effective Date __August 1, 2020__

Issued By _____ Protective Insurance Company _____
(Name of Insurance Company)

### POLLUTION OR CONTAMINATION

**This endorsement is subject to all the definitions, terms, limits of coverage and conditions of the contract to which it is attached, except to the extent the definitions, terms, limits of coverage and conditions of this endorsement differ and/or conflict with those in the contract to which it is attached then this endorsement shall control.**

Attached to Contract No. XA-1098-20, Endorsement No. 4 is effective from August 1, 2020 to the contract termination date.

**SECTION I -** Limited coverage for liability arising from **pollution or contamination.**

The Company agrees to indemnify the **insured** for sums in excess of its **self retention** which the **insured** shall become liable to pay and has paid as **damages** for **personal injury** or **property damage** caused by **pollution or contamination** which has been caused by **accident,** but only if (1) the **accident** and the resulting **personal injury or property damage** occur after the effective date of this endorsement but before this expiration date or cancellation date of the contract to which it is attached and (2) the **personal injury or property damage** is a direct result of **pollution or contamination** under one of the following circumstances:

    A. Caused by an **accident** that results in an immediate spill or discharge of **pollutants** in or from the **vehicle** in which the substance is being transported or from the container used to transport the substance; or

    B. Caused by an **accident** that results in a spill or release of **pollutants** during the loading or unloading process thereof from a receptacle or storage facility to a **vehicle** or from a **vehicle** to a receptacle or storage facility. The loading or unloading process shall be deemed complete when the transfer of the substance being loaded or unloaded stops, or the equipment used for the loading or unloading is removed or disconnected, or the **vehicle** is moved from the exact location of the loading or unloading; or

    C. Caused by delivery by unintentional mistake of any substance or liquid into the wrong receptacle or container or to the wrong address or of one product for another; or

    D. Caused by heat, smoke or fumes from a **hostile fire**.

Coverage under A, B, C and/or D above shall not apply for any discharge, loading or unloading at any dumpsite, landfill, or other site used as a depository for waste materials.

Coverage under A, B, C and/or D above shall only apply for liability arising from claims first made against the **insured** and reported to the Company within two years after the expiration date or cancellation date of the contract to which this endorsement is attached.

_____
Authorized Agent

Page 1 of 2
PE-XS-102
Revision 8.8 (09/04)

Coverage under A, B, C and/or D above shall not apply to any claim for non-pecuniary relief or for non-compensatory damages nor for fines or penalties imposed by any local, state or federal agency. Coverage shall not apply to claims for punitive or exemplary damages whether or not insurance thereof is allowed or prohibited by applicable law.

**SECTION II -** Definitions

1. **"pollution or contamination"** means the discharge, dispersal, release or escape of any **pollutant(s)** into or upon the **environment;**

2. Only for purposes of coverage under this endorsement, the word **accident** replaces the word **occurrence** as used in the contract. **"Accident"** means an instantaneous event that is both unintended and unexpected from the standpoint of the **insured** and refers to only the event that results in the **pollution or contamination** and not to any resulting **personal injury** or **property damage;**

3. **"vehicle"** means a land motor **vehicle,** trailer or semi-trailer designed for use on public roads;

4. **"hostile fire"** means one which becomes uncontrollable or breaks out from where it was intended to be.

**SECTION III -** Indemnification, hold harmless and reimbursement by the **insured**

If the Company issues any filing, bond, surety agreement, endorsement, certificate or other under-taking for or on behalf of the **insured** to any local, state or federal government or governmental agency or department or to any other person or organization relating to **pollution or contamination** liability, and if the Company may or shall become obligated to pay any amounts or sums or if the Company receives claims, demands or suits for any sums by reason of said filing, bond, surety agreement, endorsement or other undertaking for which coverage is excluded and not provided by this endorsement, then the **insured** shall indemnify, reimburse and otherwise save the Company harmless from and against any and all liability, losses, **costs, damages,** attorney and counsel fees and any expense of whatever kind or nature. The Company's issuance of said filing, bond, surety agreement, endorsement or other undertaking regardless of the terms of such instrument shall not extend coverage to the **insured** for **pollution or contamination** liability beyond that provided by this endorsement.

**SECTION IV -** Acceptance by the **insured.**

On behalf of all **insureds** under the contract to which this endorsement is attached, I have carefully read and understand the contents of this endorsement and am aware that (1) all **pollution or contamination** coverage, except that provided by this endorsement, is excluded from coverage by the Company and (2) that there is a limited period of time in which claims that may be filed against the **insureds** may be filed against the Company, and (3) that the **insureds** may be obligated to defend, reimburse and otherwise save the Company harmless for undertaking issued by the Company in accordance with Section III hereof.

C&K Trucking, LLC
_____
           Insured

_____
           Date

By: _____

_____
           Title

Endt. No. 4
Page 2 of 2
PE-XS-102
Revision 8.8 (09/04)

## ENDORSEMENT NO. 5

Named Insured _____ C&K Trucking, LLC _____

Contract No. ___ XA-1098-20 ___ Contract Period ___ August 1, 2020/2021 ___ Effective Date ___ August 1, 2020 ___

Issued By _____ Protective Insurance Company _____

(Name of Insurance Company)

COVERAGE (C)    **Uninsured or Underinsured Motorists**

COVERAGE (D)    **Personal Injury Protection**

All coverage to be provided for Coverage (C) **Uninsured or Underinsured Motorists** and/or Coverage (D) **Personal Injury Protection** under this contract shall be provided by the form of Policy Number XP1543-20 issued by the Company. Policy Number XP1543-20 and all endorsements thereto now or hereafter issued are and shall be an endorsement to this contract, but only as respects Coverage (C) **Uninsured or Underinsured Motorists** and/or Coverage (D) **Personal Injury Protection**.

All elections of coverage or rejections of coverage under or to Policy Number XP1543-20, shall be elections and/or rejections of and to this contract.

All amounts paid, payable or otherwise authorized, committed or obligated by the Company under Coverage (C) and Coverage (D) by the form of Policy Number XP1543-20, an endorsement to this contract, and any and all attendant **costs** shall be the full and complete responsibility of the **insured** and all such amounts or **costs** shall be paid or reimbursed to the Company by the **insured**. The **insured** shall be entitled to reimbursement for **ultimate net loss** in excess of its **self retention** and for apportionment of **costs** as provided by this contract.

_____
Authorized Agent

PE-XS-103
Revision 1 (11/11)

ENDORSEMENT NO. 6

Named Insured_____C&K Trucking, LLC_____

Contract No.___XA-1098-20___ Contract Period___August 1, 2020/2021___ Effective Date___August 1, 2020___

Issued By_____Protective Insurance Company_____
(Name of Insurance Company)

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020,  of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is .1%, and does not include any charges for the portion of losses covered by the United States government under the Act.

**I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT AND MAY BE SUBJECT TO A $100 BILLION CAP THAT MAY REDUCE MY COVERAGE, AND I HAVE BEEN NOTIFIED OF THE PORTION OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.**

_____
Policyholder/Applicant's Signature

_____
Date

_____
Print Name

XA-1098-20
_____
Contract Number

PE-XS-105
Revision 2 (09/16)

## ENDORSEMENT NO. 7

Named Insured_____C&K Trucking, LLC_____

Contract No.___XA-1098-20____Contract Period___August 1, 2020/2021_____Effective Date___August 1, 2020_____

Issued By_____Protective Insurance Company_____

(Name of Insurance Company)

## EMPLOYEE BENEFITS LIABILITY

**Claims made and reported coverage: The coverage afforded by this endorsement is limited to liability for only those claims that are first made against the insured and reported to the Company during the Contract Period or within sixty (60) days after the expiration of the Contract Period.**

The Company agrees to indemnify the **insured** all sums, in excess of the **self retention** amount stated in Item B of this Endorsement, which the **insured** shall become legally obligated to pay as **damages**; provided, however, such **damages** must have resulted from a **claim** which alleges an **insured event** and which is first made against the **insured** and reported to the Company during the Contract Period or within sixty (60) days after the expiration of the Contract Period.

**Limits Of Liability**

1. **Limit of Liability - Each Employee**: The Company shall be liable to pay **damages**, in excess of the amount of the **self retention** as stated in this endorsement, up to the each employee limit as stated in this endorsement for each **claim** first made and reported to the Company during the Contract Period or within sixty (60) days after the expiration of the Contract Period.

2. **Limit of Liability - Aggregate**: Subject to Item 1. above, Limit of Liability - Each Employee, the total liability of the Company for **damages** shall not exceed the Aggregate Limit as stated in Item A. Limit of Liability, of this endorsement as a result of all **claims** first made and reported to the Company during the Contract Period or within sixty (60) days after the expiration of the Contract Period.

3. **Multiple insureds, claims and claimants**: The inclusion of more than one **insured** in any **claim** or the making of **claims** by more than one person or organization shall not operate to increase the limits of liability. Two or more **claims** arising out of a single **insured event** or continuous, related or repeated **insured events** shall be treated as a single **claim**. All such **claims** whenever made shall be considered first made on the date on which the earliest **claim** arising out of such **insured event** was first made and all such **claims** are subject to the same limit of liability.

A) **Limit of Indemnity**: for purposes of this endorsement only, ITEM 4 of the DECLARATIONS is amended as follows:

The liability of the Company for each **employee** shall not exceed:                    $ ███████

and, subject to that limit for each **employee**, the total limit of the Company's liability for all **claims** under this endorsement shall not exceed in the **aggregate**:                    $ ███████

Authorized Agent

Page 1 of 4
PE-XS-104
Revision 10 (01/13)

B) **Self Retention**: for purposes of this endorsement only, ITEM 5 of the DECLARATIONS is amended as follows:

Applicable to each **claim**

C) RETROACTIVE DATE:                                                  08/01/2016

D) For purposes of this endorsement only, DEFINITIONS is amended to include the following:

1. "**administration**" means:

    a. Counseling employees, including their dependents and beneficiaries, with respect to the **employee benefit program**;

    b. Handling records in connection with the **employee benefit program**; or

    c. Effecting or terminating any employee's participation in a plan included in the **employee benefit program**.

2. "**claim**" means any written charge or lawsuit delivered to or served on the **insured** seeking **damages** or other relief for an **insured** event. All **claims** for **damages** sustained by any one employee, including the employee's dependents and beneficiaries, will be deemed to have been made at the time the first of those **claims** is made against any **insured**.

3. "**coverage territory**" means the United States of America (including its territories and possessions), Puerto Rico and Canada.

4. "**damages**" means monetary compensation for a claimant's economic or non-economic loss that is directly related to a **claim**, but does not include loss of use or destruction of tangible or intangible business or personal property or medical expenses for physical injury to a person's body. **Damages** shall not include **costs**.

5. "**employee**" means your officers, partners and employees whether actively employed, disabled or retired.

6. "**employee benefit program**" means the following plans:

    a. Group life insurance group accident or health insurance, **profit sharing plans**, pension plans and

    b. **stock subscription plans**, provided that no one other than an employee may subscribe to such insurance or plans;

    c. Unemployment insurance, social security benefits, **workers' compensation** and disability benefits;

7. "**insured event**" means any negligent act, error or omission of the **insured**, or any other person for whose acts the **insured** is legally liable. The negligent act, error or omission must be committed in the **administration** of the **insured's employee benefit program**, provided always that no portion of any event took place prior to the Retroactive Date stated in this endorsement; and that no portion of any event took place subsequent to the termination of the Contract; and that no portion of any event took place outside of the **coverage territory**.

8. "**profit sharing plans**" mean only such plans that are equally available to all full time employees.

9. "**stock subscription plans**" mean only such plans that are equally available to all full time employees.

E) For purposes of this endorsement only, EXCLUSIONS is amended to include the following:

This endorsement does not apply to any **claim** or portion thereof made against the **insured**:

1. Based on conduct of the **insured** or at the **insured's** direction that is committed with wanton, willful, reckless or intentional disregard of any law or laws that is or are the foundation for the **claim**, or with criminal or malicious purpose or intent, but this exclusion shall not apply to the strictly vicarious liability of any **insured** for the intentional, wanton, willful, reckless, criminal or malicious conduct of another **insured**;

2. arising from the liability of others out of operation of law under any contract or agreement, verbal or written;

3. **personal injury** or **property damage**;

4. loss arising out of failure of performance of contract by any insurer;

5. loss arising out of an insufficiency of funds to meet any obligations under any plan included in the **employee benefit program**;

6. any **claim** or suit based upon:

   a. failure of any investment to perform as represented by the **insured**, or

   b. advice given to any person to participate or not to participate in any plan included in the **employee benefit program**;

7. loss arising out of any **insured's** failure to comply with the mandatory provisions of any law concerning **workers' compensation**, unemployment insurance, social security or disability benefits;

8. loss for which any **insured** is liable because of liability imposed on a fiduciary by the Employee Retirement Security Act of 1974, as now or hereafter amended;

9. loss or damage for which benefits have accrued under the terms of an employee benefit plan to the extent that such benefits are available from funds accrued by the **insured** for such benefits or from

10. collectible insurance, not withstanding in the **insured's** act, error or omission in administering the plan which precluded the claimant from receiving such benefits;

11. arising out of any criminal proceedings;

12. arising out of:

    a. The wrongful termination of an employee

    b. The coercion, demotion, reassignment, discipline or harassment of an employee

    c. Discrimination against an employee;

Endt. No. 7
Page 3 of 4
PE-XS-104
Revision 10 (01/13)

F) For purposes of this endorsement only, CONDITIONS is amended to include the following:

1. Duties In the Event of Act, Error or Omission, **Claim** or suit.

  a. The **insured** must notify the Company as soon as practicable of an act, error or omission which may result in a **claim**. Notice should include:

    (1) What the act, error or omission was and when it occurred.

    (2) The names and addresses of any employees who may suffer **damages** as a result of the act, error or omission.

    Notice of an act, error or omission is not notice of a **claim**.

  b. If a **claim** is received by any **insured**, the **insured** must:

    (1) Immediately record the specifics of the **claim** and the date received; and

    (2) Notify the Company, in writing, as soon as practicable.

  c. The **insured** must:

    (1) Immediately send the Company copies of any demands, notices, summons or legal papers received in connection with the **claim** or a "suit";

    (2) Authorize the Company to obtain records and other information

    (3) Cooperate with the Company in the investigation, settlement or defense of the **claim** or "suit"; and

    (4) Assist the Company, upon its request, in the enforcement of any right against any person or organization which may be liable to the **insured** because of **damage** to which this insurance may also apply.

2. Legal action against the Company:

  No person or organization has a right under this Coverage Part:

  a. To join the Company a party or otherwise bring the Company into a "suit" asking for **damages** from an **insured**; or

  b. To sue the Company on this Coverage Part unless all of its items have been fully complied with.

  A person or organization may sue the Company to recover on an agreed settlement or on a final judgment against an **insured** obtained after actual trial; but the Company will not be liable for **damages** that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by the Company, the **insured** and the claimant or the claimant's legal representative.

Endt. No. 7
Page 4 of 4
PE-XS-104
Revision 10 (01/13)

ENDORSEMENT NO. 8

Named Insured_____C&K Trucking, LLC_____

Contract No.__XA-1098-20__ Contract Period__August 1, 2020/2021__ Effective Date__August 1, 2020__

Issued By_____Protective Insurance Company_____
(Name of Insurance Company)

## CYBER LIABILITY EXCLUSION

**EXCESS CONTRACT, EXCLUSIONS,** is amended to include:

U.    To **personal injury** or **property damage** arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information. This exclusion applies even if **damages** are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense paid by the **insured** arising out of any access to or disclosure of any person's or organization's confidential or personal information.

To **personal injury** or **property damage** arising out of the loss of, damage to, corruption of, inability to access, or inability to manipulate **electronic data**. This exclusion applies even if **damages** are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense paid by the **insured** arising out of any access to or disclosure of any person's or organization's confidential or personal information.

To **personal injury** arising directly or indirectly out of any action or omission that violates or is alleged to violate: (1) The Telephone Consumer Protection Act, including any amendment of or addition to such law; (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; (3) The Fair Credit Reporting Act, and amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act; or (4) Any federal, state or local statute, ordinance or regulation that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**EXCESS CONTRACT, DEFINITIONS,** is amended to include:

GG.    **"electronic data"** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment. With respect to **property damage, electronic data** is not tangible property.

_Authorized Agent_

PE-XS-274
Revision 1 (04/15)

ENDORSEMENT NO. 9

Named Insured_____C&K Trucking, LLC_____

Contract No.___XA-1098-20___ Contract Period ___August 1, 2020/2021___ Effective Date___August 1, 2020___

Issued By_____Protective Insurance Company_____
(Name of Insurance Company)

## MILES DEFINITION

**EXCESS CONTRACT, DEFINITIONS**, is amended to include:

HH.    "**miles**" means the total miles operated by all units, loaded or unloaded, during the contract period whether the shipment originates with you or another trucker. Miles shall include the total miles developed from the rental of equipment, with or without drivers.

**EXCESS CONTRACT, CONDITIONS, B. Premium,** is deleted and replaced with the following:

B.    **Premium:**

All premiums for this contract are computed in accordance with the Company's rules, rates, rating plans, premiums and minimum premiums applicable to the coverages afforded.

The deposit premium stated in the Declarations is an advance premium only. Upon termination of this contract, the earned premium shall be computed and the deposit premium returned to the **insured** less any earned premium due the Company.

No later than twenty (20) days past the end of each month or other reporting period approved by the Company throughout the duration of this contract, the **insured** shall report the total **miles** and **brokerage operations gross receipts** recorded during that month or period and pay the premium earned thereon at the premium rate prevailing during that month or period.

_____
Authorized Agent

PE-XS-108
Revision 1 (11/11)

## ENDORSEMENT NO. 10

Named Insured _____ C&K Trucking, LLC _____

Contract No. ___ XA-1098-20 ___ Contract Period ___ August 1, 2020/2021 ___ Effective Date ___ August 1, 2020 ___

Issued By _____ Protective Insurance Company _____
(Name of Insurance Company)

### ADDITIONAL INSURED(S) DEFINITION

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR CONTRACT FOR
INFORMATIONAL PURPOSES ONLY

"**Additional insured(s)**" is defined in the contract under the **Definitions** section **Definition M, (5),** of the contract. **Definition M, (5),** reads as follows:

The "**additional insured(s)**" as designated in the endorsements and/or certificates issued by the Company. The **additional insured(s)** shall be indemnified under this contract only to the extent that the **named insured** or **related insured** is obligated by a **covered contract** to reimburse, hold harmless or indemnify the **additional insured(s)**. Indemnification under this contract for such **additional insured(s)** shall also be subject to all terms, definitions, conditions and exclusions of this contract. The **named insured** or **related insured** as designated by the Company shall pay all amounts payable to or on behalf of the **additional insured(s)** as and when requested by the Company and shall be entitled to reimbursement for **ultimate net loss** in excess of its **self retention** as provided by this contract;

This endorsement is subject to all the definitions, terms, limits of coverage and conditions of the contract to which it is attached.

_____
Authorized Agent

PE-XS-191
Revision 1 (10/12)

ENDORSEMENT NO. 11

---

Named Insured_____C&K Trucking, LLC_____

Contract No.___XA-1098-20___ Contract Period___August 1, 2020/2021_____ Effective Date___August 1, 2020_____

Issued By_____Protective Insurance Company_____
(Name of Insurance Company)

---

## WAIVER OF SUBROGATION

Waiver of Subrogation applies to the Person(s) or Organization(s) listed in the Schedule below:

### SCHEDULE

All entities as required by written contract with you.

_____
Authorized Agent

PE-XS-267
Revision 1 (10/14)

ENDORSEMENT NO. 12

Named Insured_____C&K Trucking, LLC_____

Contract No.___XA-1098-20___ Contract Period ___August 1, 2020/2021___ Effective Date___August 1, 2020___

Issued By_____Protective Insurance Company_____
(Name of Insurance Company)

## EXPENSES PART OF LOSS

**EXCESS CONTRACT, CONDITIONS, A. Payment of Costs**, is deleted and replaced with the following:

A.      **Payment of Costs**:

All **costs** shall be paid by the **insured**.  Costs shall reduce the **insured's self retention** but shall not reduce the applicable Limit of Indemnity.  After payment of the **ultimate net loss**, the **costs** incurred by the **insured** shall be apportioned as follows:

(a)  If the **ultimate net loss** plus **costs** is equal to or less than the **insured's self retention**, then no **costs** shall be payable by the Company;

(b)  If the **ultimate net loss** plus **costs** exceeds the **insured's self retention** then the Company shall reimburse all **costs** paid by the **insured** in excess of the **self retention**, subject to (c);

(c)  Once the applicable Limit of Indemnity has been exhausted, due to either our payment of the applicable Limit of Indemnity or offer to pay the applicable Limit of Indemnity, no further **costs** shall be paid by the Company.

Authorized Agent

PE-XS-206
Revision 1 (08/12)

ENDORSEMENT NO. 13

Named Insured          C&K Trucking, LLC

Contract No.    XA-1098-20     Contract Period    August 1, 2020/2021     Effective Date    August 1, 2020

Issued By                Protective Insurance Company

(Name of Insurance Company)

## PRIMARY AND NON-CONTRIBUTORY

Where required by written contract and only for an **occurrence** arising from the **named insured's** negligence the coverage provided herein is primary, subject to the named insured's **self retention**, and non-contributory with any other insurance carried by an **additional insured**.

Authorized Agent

PE-XS-132
Revision 1 (11/11)

ENDORSEMENT NO. 14

Named Insured_____C&K Trucking, LLC_____

Contract No.___XA-1098-20___Contract Period___August 1, 2020/2021___Effective Date___August 1, 2020___

Issued By_____Protective Insurance Company_____
(Name of Insurance Company)

## CONTRACTUAL LIABILITY – RAILROADS

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site listed in the Schedule below, **EXCESS CONTRACT**, **DEFINITIONS, E. "covered contract"**, is replaced by the following:

E.  **"covered contract"** means:

(1)  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not a **"covered contract"**;

(2)  A sidetrack agreement;

(3)  Any easement or license agreement;

(4)  Any obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

(5)  An elevator maintenance agreement;

(6)  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for **personal injury** or **property damage** to a third person or organization. Tort liability means a liability that would be imposed by law in absence of any contract or agreement.

Paragraph 6. does not include that part of any contract or agreement:

(1)  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a)  Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b)  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

(2)  Under which the **insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **insured's** rendering or failure to render professional services, including those listed in Paragraph (1) above and supervisory, inspection, architectural or engineering activities.

_____
Authorized Agent

Page 1 of 2
PE-XS-288
Revision 1 (08/16)

## SCHEDULE

**Scheduled Railroad:**

Georgia Pacific LLC, GP Cellhouse and their US Subsidiaries

**Designated Job Site:**

Endt. No. 14
Page 2 of 2
PE-XS-288
Revision 1 (08/16)

ENDORSEMENT NO. 15

Named Insured _____ C&K Trucking, LLC _____

Contract No. __XA-1098-20__ Contract Period __August 1, 2020/2021__ Effective Date __August 1, 2020__

Issued By _____ Protective Insurance Company _____
(Name of Insurance Company)

## CONTRACTUAL LIABILITY – RAILROADS

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site listed in the Schedule below, **EXCESS CONTRACT**, **DEFINITIONS**, **E. "covered contract"**, is replaced by the following:

E.  **"covered contract"** means:

   (1)  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not a **"covered contract"**;

   (2)  A sidetrack agreement;

   (3)  Any easement or license agreement;

   (4)  Any obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   (5)  An elevator maintenance agreement;

   (6)  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for **personal injury** or **property damage** to a third person or organization. Tort liability means a liability that would be imposed by law in absence of any contract or agreement.

Paragraph 6. does not include that part of any contract or agreement:

   (1)  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

   (2)  Under which the **insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **insured's** rendering or failure to render professional services, including those listed in Paragraph (1) above and supervisory, inspection, architectural or engineering activities.

_____
Authorized Agent

Page 1 of 2
PE-XS-288
Revision 1 (08/16)

**SCHEDULE**

**Scheduled Railroad:**

Norfolk Southern Railway Company

**Designated Job Site:**

Endt. No. 15
Page 2 of 2
PE-XS-288
Revision 1 (08/16)

ENDORSEMENT NO. 16

Named Insured_____**C&K Trucking, LLC**_____

Contract No.___**XA-1098-20**___ Contract Period ___**August 1, 2020/2021**_____ Effective Date___**August 1, 2020**_____

Issued By_____**Protective Insurance Company**_____
(Name of Insurance Company)

## CONTRACTUAL LIABILITY – RAILROADS

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site listed in the Schedule below, **EXCESS CONTRACT**, **DEFINITIONS, E. "covered contract",** is replaced by the following:

E.  **"covered contract"** means:

(1) A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not a **"covered contract"**;

(2) A sidetrack agreement;

(3) Any easement or license agreement;

(4) Any obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

(5) An elevator maintenance agreement;

(6) That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for **personal injury** or **property damage** to a third person or organization. Tort liability means a liability that would be imposed by law in absence of any contract or agreement.

Paragraph 6. does not include that part of any contract or agreement:

(1) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

(2) Under which the **insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **insured's** rendering or failure to render professional services, including those listed in Paragraph (1) above and supervisory, inspection, architectural or engineering activities.

_____
Authorized Agent

**SCHEDULE**

**Scheduled Railroad:**

BNSF Railway Company

**Designated Job Site:**

Endt. No. 16
Page 2 of 2
PE-XS-288
Revision 1 (08/16)

ENDORSEMENT NO. 17

Named Insured_____C&K Trucking, LLC_____

                              Contract
Contract No.___XA-1098-20____Period___August 1, 2020/2021_____Effective Date___August 1, 2020_____

Issued By_____Protective Insurance Company_____
                              (Name of Insurance Company)

## CONTRACTUAL LIABILITY – RAILROADS

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site listed in the Schedule below, **EXCESS CONTRACT**, **DEFINITIONS, E. "covered contract"**, is replaced by the following:

E.  **"covered contract"** means:

  (1)  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not a **"covered contract"**;

  (2)  A sidetrack agreement;

  (3)  Any easement or license agreement;

  (4)  Any obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

  (5)  An elevator maintenance agreement;

  (6)  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for **personal injury** or **property damage** to a third person or organization. Tort liability means a liability that would be imposed by law in absence of any contract or agreement.

Paragraph 6. does not include that part of any contract or agreement:

  (1)  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

  (2)  Under which the **insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **insured's** rendering or failure to render professional services, including those listed in Paragraph (1) above and supervisory, inspection, architectural or engineering activities.

_____
Authorized Agent

Page 1 of 2
PE-XS-288
Revision 1 (08/16)

**SCHEDULE**

**Scheduled Railroad:**

CSX Intermodal Terminals, Inc.

**Designated Job Site:**

Endt. No. 17
Page 2 of 2
PE-XS-288
Revision 1 (08/16)

ENDORSEMENT NO. 18

Named Insured_____ C&K Trucking, LLC _____

Contract No.___XA-1098-20___ Contract Period___August 1, 2020/2021_____ Effective Date___August 1, 2020_____

Issued By_____ Protective Insurance Company_____

(Name of Insurance Company)

## CONTRACTUAL LIABILITY – RAILROADS

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site listed in the Schedule below, **EXCESS CONTRACT**, **DEFINITIONS, E. "covered contract",** is replaced by the following:

E. **"covered contract"** means:

(1) A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not a **"covered contract"**;

(2) A sidetrack agreement;

(3) Any easement or license agreement;

(4) Any obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

(5) An elevator maintenance agreement;

(6) That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for **personal injury** or **property damage** to a third person or organization. Tort liability means a liability that would be imposed by law in absence of any contract or agreement.

Paragraph 6. does not include that part of any contract or agreement:

(1) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

(2) Under which the **insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **insured's** rendering or failure to render professional services, including those listed in Paragraph (1) above and supervisory, inspection, architectural or engineering activities.

Authorized Agent

Page 1 of 2
PE-XS-288
Revision 1 (08/16)

## SCHEDULE

**Scheduled Railroad:**

Union Pacific Railroad Company

**Designated Job Site:**

Endt. No. 18
Page 2 of 2
PE-XS-288
Revision 1 (08/16)

## ENDORSEMENT NO. 19

Named Insured_____ C&K Trucking, LLC_____

Contract No.___XA-1098-20____ Contract Period___August 1, 2020/2021_____ Effective Date___August 1, 2020_____

Issued By_____ Protective Insurance Company_____
(Name of Insurance Company)

## UNIFORM INTERMODAL INTERCHANGE

It is agreed that such coverage as is afforded by the contract for Bodily Injury and Property Damage Liability applies to liability assumed by the insured, as "Motor Carrier Participant", under Section F.4. of the Uniform Intermodal Interchange and Facilities Access Agreement, and any subsequent amendments thereto:

F.   Liability, Indemnity, and Insurance

F.4.   Indemnity

a.   Subject to the exceptions set forth in Subsection (b) below, Motor Carrier agrees to defend, hold harmless, and fully indemnify the Indemnitees (without regard to whether the Indemnitees' liability is vicarious, implied by law, or as a result of the fault or negligence of the Indemnitees), against any and all claims, suits, loss, damage or liability, for bodily injury, death and/or property damage, including reasonable attorney fees and costs incurred in the defense against a claim or suit, or incurred because of the wrongful failure to defend against a claim or suit, or in enforcing subsection F.4. (collectively, the "Damages" as described by the Uniform Intermodal Interchange and Facilities Access Agreement), caused by or resulting from the Motor Carrier's: use or maintenance of the Equipment during an Interchange Period; and/or presence on the Facility Operator's premises.

b.   Exceptions:  The foregoing indemnity provision shall not apply to the extent Damages: (i) occur during the presence of the Motor Carrier on the Facility Operator's premises and are caused by or result from the negligent or intentional acts or omissions of the Indemnitees, their agents, employees, vendors or third party invitees (excluding Indemnitor); or (ii) are caused by or result from defects to the Equipment with respect to items other than those set forth in Exhibit A, unless such defects were caused by or resulted from the negligent or intentional acts or omissions of the Motor Carrier, its agents, employees, vendors, or subcontractors during the Interchange Period.

Subject to the following provisions:

1.   The limit of the Motor Carrier's liability under this contract for damages because of bodily injury and property damage arising out of the use, operation, maintenance or possession of interchange equipment shall be the applicable amount stated below and designated by an "x" unless a greater amount is otherwise stated in the contact as applicable to such bodily injury or property damage.

[ x ]   Single Limit Bodily Injury and Property Damage...........................$1,000,000 Each Accident
(or the Equivalent)

2.   The company shall:

a.   Upon issuance of this endorsement, furnish to the **President, The Intermodal Association of North America, 11785 Beltsville Drive, Suite 1100, Calverton, MD 20705-4048**, a properly executed Certificate of Insurance which carries the notation that the company has issued to the insured Motor Carrier an indemnity agreement; and

b.   Upon cancellation or termination of the contract of which this endorsement forms a part, furnish a notice of such cancellation or termination **NOT LESS THAN 30 DAYS** prior to the effective date of such cancellation or termination, such notice to be mailed to said President at the above address.

_____
Authorized Agent

PE-XS-299
Revision 1 (01/17)

ENDORSEMENT NO. 20

Named Insured_____ C&K Trucking, LLC _____

Contract No._____XA-1098-20_____ Period _____August 1, 2020/2021_____ Effective Date____August 1, 2020_____

Issued By_____ Protective Insurance Company _____
(Name of Insurance Company)

## EXCLUSION – ALL HAZARDS IN CONNECTION WITH DESIGNATED PREMISES

**EXCESS CONTRACT, EXCLUSIONS,** is amended to include:

V.      This coverage does not apply to **general liability** arising out of:

(1) The ownership, maintenance or use of the premises shown in the Schedule below or any property located on these premises;

(2) Operations on those premises or elsewhere which are necessary or incidental to the ownership, maintenance or use of those premises; or

(3) Goods or products manufactured at or distributed from those premises.

### SCHEDULE

6205 West 101st Street
Chicago Ridge, IL  60415

_____
Authorized Agent

PE-XS-308
Revision 1 (08/18)

ENDORSEMENT NO. 21

Named Insured_____C&K Trucking, LLC_____

Contract No.___XA-1098-20___ Contract Period ___August 1, 2020/2021_____ Effective Date___August 1, 2020_____

Issued By_____Protective Insurance Company_____

(Name of Insurance Company)

## MINIMUM PREMIUM

In the event the actual liability premium for the period of this policy is less than   % of the projected liability premium, the premium due for this policy period shall be based upon   % of the projected liability premium.

_____
Authorized Agent

PE-XS-107
Revision 3 (04/17)