## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

PROTECTIVE INSURANCE COMPANY,

     Plaintiff,

v.                                                                    Case No. 2:23-cv-02642-MSN-tmp

C&K TRUCKING LLC,
RONALD D. BLACK, and
NORFOLK SOUTHERN RAILWAY COMPANY,

     Defendants.

*and*

NORFOLK SOUTHERN RAILWAY COMPANY,

     Cross-Complaint Plaintiff,

v.

C&K TRUCKING, LLC,

     Cross-Complaint Defendant.

---

## ORDER ON ALL OUTSTANDING MOTIONS

---

     After a deadly accident at Norfolk Southern Railway Company's ("Norfolk") railyard in Rossville, Tennessee, litigation ensued. At issue here is whether C&K Trucking, LLC ("C&K"), the lessee of the tractor trailer involved in the accident, or its insurer, Protective Insurance Company ("Protective"), owes Norfolk a defense or indemnity in that litigation pursuant to two contracts. And if so, whether Protective's denial of Norfolk's demand for a defense was in bad faith.

## BACKGROUND

The Accident.   On November 5, 2020, Ronald Black was driving a 2000 Freightliner Tractor attached to a loaded intermodal chassis trailer ("tractor trailer") at Norfolk's railyard in Rossville, Tennessee. (ECF No. 52-1 at PageID 616; ECF No. 55-1 at PageID 677–78.)  The tractor trailer was leased to C&K.  (ECF No. 52-1 at PageID 616; ECF No. 55-1 at PageID 677–78.) Black was attempting to exit the railyard.  (ECF No. 52-1 at PageID 616; ECF No. 55-1 at PageID 677–78.)  The first crossing he went to was blocked, so he turned around and traveled parallel to the tracks in the opposite direction.   (ECF No. 52-1 at PageID 616; ECF No. 55-1 at PageID 677–78.) (ECF No. 55-1 at PageID 678.)  After driving along the tracks for about a minute, Black turned and attempted to cross.  (ECF No. 55-1 at PageID 678; ECF No. 53-2 (video).)  When he did so, he collided with a railcar, causing his container to tip over and fall onto a Norfolk vehicle parked near the tracks.  (ECF No. 55-1 at PageID 678.)  Two Norfolk employees, Beau Thomas and Charles Terry Vanderford, Jr., were inside the vehicle.  (Id. at PageID 679.)  Thomas died because of the accident, and Vanderford was allegedly injured.  (Id.)

The Underlying Lawsuit.   On October 14, 2021, Jenna W. Thomas, as Beau Thomas' surviving spouse and as the mother of their two minor children, along with Vanderford ("Underlying Plaintiffs"), filed suit against C&K and Black in the Circuit Court for Fayette County, Tennessee.  (ECF No. 52-1 at PageID 616–17; ECF No. 55-1 at PageID 677–78.)  The original complaint asserted claims only against C&K and Black.  On January 31, 2022, the Underlying Plaintiffs filed a first amended complaint, which added a single count of negligence against Norfolk.  (ECF No. 55-1 at PageID 680.)  But the first amended complaint was never served on Norfolk, and less than a month after filing it, the Underlying Plaintiffs sought leave to

file a second amended complaint because they wanted to drop their claims against Norfolk.[1]  (*Id.*

at PageID 681.)  On March 22, 2022, Black filed a counterclaim against the Underlying Plaintiffs

and a third-party complaint against Norfolk and Harry Poole ("Third-Party Complaint"), alleging

that Norfolk and its employees were negligent in failing to warn Black that the train was moving

or about to move on the tracks.  (ECF No. 52-1 at PageID 616–17; ECF No. 55-1 at PageID 681.)

  <u>The Contracts.</u>  There are two contracts relevant to the defense and indemnity issues.  First,

the Uniform Intermodal Interchange & Facilities Access Agreement ("UIIA"), which governed

C&K's use of and entry to Norfolk's railyard where the accident occurred.  (ECF No. 55-1 at

PageID 682.)  The relevant provision on indemnity at issue here is Section F.4, which provides as

follows:

  4. Indemnity:

   a. Subject to the exceptions set forth in Subsection (b) below, Motor Carrier agrees to defend, hold harmless and fully indemnify the Indemnitees (without regard to whether the Indemnitees' liability is vicarious, implied in law, or as a result of the fault or negligence of the Indemnitees), against any and all claims, suits, loss, damage or liability, for bodily injury, death and/or property damage (other than cargo loss, damage, or delay unrelated to a commercial motor vehicle accident involving the Motor Carrier or theft of the cargo during the Interchange Period), including reasonable attorney fees and costs incurred in the defense against a claim or suit, or incurred because of the wrongful failure to defend against a claim or suit, or in enforcing subsection F.4 (collectively, the "Damages"), caused by or resulting from the Motor Carrier's: use or maintenance of the Equipment during an Interchange Period; and/or presence on the Facility Operator's premises. [Revised 10/01/18]

   b Exceptions: The foregoing indemnity provision shall not apply to the extent Damages: (i) occur during the presence of the Motor Carrier on the Facility Operator's premises and are caused by or result from the negligent or intentional acts or omissions of the

---

[1] The Underlying Plaintiffs apparently did not actually file their second amended complaint until July 2024 or thereafter, but that is not material to resolution of the issues in this case.  (*See* ECF No. 34 at PageID 371–72; ECF No. 35 at PageID 376–77.)

Indemnitees, their agents, employees, vendors or third party invitees (excluding Indemnitor); or (ii) are caused by or result from defects to the Equipment with respect to items other than those set forth in Exhibit A, unless such defects were caused by or resulted from the negligent or intentional acts or omissions of the Motor Carrier, its agents, employees, vendors, or subcontractors during the Interchange Period. [Revised 1/17/05]

(ECF No. 63-1 at PageID 737; ECF No. 52-1 at PageID 619–20; ECF No. 55-1 at PageID 682.)

In the above provision, "Motor Carrier" refers to C&K, and "Indemnitees" and "Facility Operator"

refers to Norfolk.  (ECF No. 55-1 at PageID 682.)

The UIIA also required C&K to obtain insurance coverage that met certain parameters, as

set forth in Section F.6, which provides as follows:

6.  Insurance: To the extent permitted by law, Motor Carrier shall provide the following insurance coverages in fulfillment of its legal liability and obligations contained in this Agreement:

a.  A commercial automobile insurance policy with a combined single limit of $1,000,000 or greater, insuring all Equipment involved in Interchange including vehicles of its agents or contractors; said insurance policy shall be primary to any and all other applicable insurance and shall name the Provider as additional insured. The extent of Providers' additional insured status is limited to the provisions of Section F.4 hereof.

(ECF No. 52-1 at PageID 620–21; ECF No. 55-1 at PageID 683–84.)

And that brings us to the second relevant contract—Excess Indemnity Contract Number

XA-1098-20, issued by Protective to C&K, with a policy period that covered when the accident

occurred ("Policy"). (ECF No. 52-1 at PageID 617; ECF No. 55-1 at PageID 684.)  The Policy

provides in relevant part as follows:

**INDEMNITY AGREEMENTS**

The Company hereby agrees to indemnify the **named or related insured** for **ultimate net loss**, less the **self retention**, and subject to the limit of indemnity, which the **named or related insured** has or may by law become liable to pay and has paid to any person or persons as **damages**, or for which loss has been incurred

4

under Coverages F & G, as the result of an **occurrence** arising out of **trucking operations** or **brokerage operations**:

. . .

PROVIDED ALWAYS THAT it is expressly agreed that no liability shall attach to the Company, except under Coverages F & G, until the **named insured** or **related insured** has paid the **ultimate net loss**.

(ECF No. 1-3[2] at PageID 33; ECF No. 52-1 at PageID 618.)  Defined terms are in bold, and as relevant here, the "named insured" is C&K.  (ECF No. 1-3 at PageID 34 & 38.)  The "related insureds" are listed on an endorsement, but none of those entities are parties here.  (*See id.* at PageID 48.)  Both the named insured and related insured are included in the definition of "insured," along with the "additional insured(s)," which is defined under the definition of the "insured," as follows:

M.    "**insured**": Each of the following is an **insured** to the extent set forth below:

(1)    The "**named insured**" as designated in the Declarations;

(2)    The "**related insured(s)**", which shall include, . . .

. . .

(5)    The "**additional insured(s)**" as designated in the endorsements and/or certificates issued by the Company. The **additional insured(s)** shall be indemnified under this contract only to the extent that the **named insured** or **related insured** is obligated by a **covered contract** to reimburse, hold harmless or indemnify the **additional insured(s)**. Indemnification under this contract for such **additional insured(s)** shall also be subject to all terms, definitions, conditions and exclusions of this contract. The **named insured** or **related insured** as designated by the Company shall pay all amounts payable to or on behalf of the **additional insured(s)** as and when requested by the Company and shall be entitled to reimbursement for **ultimate net loss** in excess of its **self retention** as provided by this contract;

(ECF No. 1-3 at PageID 38–39, 60.)

---

[2] It is undisputed that Exhibit 3 attached to the Complaint is a "true and exact copy of the Excess Indemnity Contract."  (ECF No. 52-1 at PageID 618.)

The Policy goes on to provide the following as to payment of costs and administration of

claims:

## CONDITIONS

**A.    Payment of Costs**:

All **costs** shall be paid by the **insured**. Costs shall reduce the **insured's self retention** but shall not reduce the applicable Limit of Indemnity.  After payment of the **ultimate net loss**, the **costs** incurred by the insured shall be apportioned as follows:

> (a)    If the **ultimate net loss** plus **costs** is equal to or less than the **insured's self retention**, then no **costs** shall be payable by the Company;

> (b)    If the **ultimate net loss** plus **costs** exceeds the **insured's self retention**, then the Company shall reimburse all **costs** paid by the **insured** in excess of the **self retention**, subject to (c);

> (c)    Once the applicable Limit of Indemnity has been exhausted, due to either our payment of the applicable Limit of Indemnity or offer to pay the applicable Limit of Indemnity, no further **costs** shall be paid by the Company.

> . . .

**F.    Administration of Claims:**

The **insured** shall maintain personnel who are trained, experienced and competent to administer claims against it which might involve amounts in excess of its **self retention**.  Such personnel shall be approved by and be satisfactory to the Company.

The **insured** shall fully investigate, settle or defend all claims and shall conduct the defense and appeal in all actions, suits and proceedings commenced against it or the Company if the Company is named as a defendant.

(*Id.* at PageID 42–43, 62.)

The Policy expressly provides that its coverage for "Bodily Injury and Property Damage

Liability" applies to the liability assumed by the insured, as "Motor Carrier Participant," under

Section F.4 of the UIIA.  (*Id.* at PageID 74.)

Finally, here's some other definitions from the Policy that are relevant to the scope of its coverage that's at issue here:

D.    "**costs**" means court costs, post judgment interest upon awards and judgments, and investigation, adjustment and legal expenses incurred by the **insured**, but does not include fines or statutory penalties, office expenses of the **insured**, salaries and expenses of employees or fees of counsel, except defense counsel, of the **insured**;

G.    "**damages**" means a monetary judgment or settlement paid by the **insured** and does not include fines or statutory penalties;

Z.    "**self retention**" means the amount, as specified in the Declarations, of the **ultimate net loss** to be paid solely by the **insured** and not subject to reimbursement by the Company. The **insured**'s **self retention** shall not be reduced or eliminated by insurance, salvage, contribution, recoveries or reimbursements of any type from any source except **Employers Liability** insurance purchased by the **insured**;

CC.    "**ultimate net loss**" means the total sums paid as **damages** in settlement of a claim or in satisfaction of a judgment, including pre-judgment interest, for which the **insured** is legally liable, and for losses otherwise incurred for which coverage is provided under this contract after making deductions for all other recoveries, salvages and insurance (whether recoverable or not), contributions and reimbursements. However no deduction shall be made for recoveries by or reimbursements to the **insured** from other **Employers Liability** insurance purchased by the **insured**. **Ultimate net loss** shall not include **costs**;

(*Id.* at PageID 37–38, 41.)

## JURISDICTION & CHOICE OF LAW

Federal district courts have original jurisdiction of all civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1).

For purposes of diversity jurisdiction, a person is a citizen of the state in which she is domiciled. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989); *Smith v. Queener*, 2018 WL 3344176, at *2 (6th Cir. Jan. 4, 2018). "Residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile." *Texas v. Florida*,

306 U.S. 398, 424 (1939) (collecting cases). Limited liability companies have the citizenship of each of their members. *Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1015 (2016) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990)); *accord Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). A corporation is a citizen of the state where it was incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

Protective was incorporated in and has its principal place of business in Indiana. (ECF No. 1 at PageID 2.) Norfolk was incorporated in Virginia and has its principal place of business in Georgia. (*Id.*) Ronald Black is a citizen of Tennessee. (*Id.*) C&K is a limited liability company with two members who are both citizens of Illinois. (ECF No. 22 at PageID 292.) The parties are completely diverse, so the Court has diversity jurisdiction under 28 U.S.C. § 1332.

State substantive law applies to state law claims brought in federal court. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Federal courts sitting in diversity apply the choice-of-law rules of the forum state. *See, e.g., State Farm Mutual Auto. Ins. Co. v. Norcold, Inc.,* 849 F.3d 328, 331 (6th Cir. 2017); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). For contract disputes, Tennessee follows the rule of *lex loca constractus*, meaning that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent. *Blackwell v. Sky High Sports Nashville Operations, LLC*, 523 S.W.3d 624, 632 (Tenn. Ct. App. 2017) (quoting *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 474–75 (Tenn. Ct. App. 2003)).

The parties agree Maryland law applies to the UIIA, Illinois law applies to the Policy, and Tennessee law applies to Norfolk's bad faith claim. Because there is no dispute about what state's law applies, the Court need not engage in a choice of law analysis *sua sponte*. *See Iron Horse*

*Energy Servs., Inc. v. S. Concrete Prods., Inc.*, 443 F. Supp. 3d 952, 956 (W.D. Tenn. 2020) (citing

*GBJ Corp. v. E. Ohio Paving Co.*, 139 F.3d 1080, 1085 (6th Cir. 1998) and *Yearta v. Amusements*

*of Am., Inc.*, No. 2:17-cv-02117-SHM-jay, 2020 WL 61054, at *3 (W.D. Tenn. Jan. 6, 2020)).

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment — and

the Court to grant summary judgment — "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A party asserting the presence or absence of genuine issues of material facts must support

its position either by "citing to particular parts of materials in the record," including depositions,

documents, affidavits or declarations, stipulations, or other materials, or by "showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In ruling

on a motion for summary judgment, the Court must view the facts contained in the record and all

inferences that can be drawn from those facts in the light most favorable to the nonmoving party.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports,*

*Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence,

judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of

material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may

discharge this burden either by producing evidence that demonstrates the absence of a genuine

issue of material fact or simply "by 'showing' — that is, pointing out to the district court — that

there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where the

movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248–49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475–76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id.* at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252–53.

If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to

demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* at 327.

Finally, "the standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *Thornton v. Dutch Nats. Processing, LLC*, 629 F. Supp. 3d 777, 786 (M.D. Tenn. 2022) (cleaned up). So even though there's cross-motions, it's business as usual: The court evaluates each party's motion on its own merits, drawing all reasonable inferences against the party whose motion is under consideration. *See Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (citing *Mingus Constructors v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)). And summary judgment in favor of either party is proper only if no disputes remain as to material facts. *Id.*

## **DISCUSSION**

Protective's complaint in this matter seeks a declaration that Protective and C&K do not owe a duty to defend or indemnify Norfolk for Black's claims in his Third-Party Complaint under either the UIIA or the Policy. (*See* ECF No. 1.) Norfolk asserts three counterclaims against Protective: (1) a declaration that Protective has a duty to defend or indemnify Norfolk for the claims in the Third-Party Complaint under the UIIA and the Policy; (2) breach of contract for declining Norfolk's tender; and (3) bad faith under Tenn. Code Ann. § 56-7-105 for Protective's failure to defend Norfolk against the claims in the Third-Party Complaint. (*See* ECF No. 9.) Norfolk also asserts a crossclaim for breach of contract against C&K for C&K's failure to defend Norfolk pursuant to the UIIA. (*See id.*) Protective and Norfolk each move for summary judgment on the declaratory judgment claims, and Norfolk's breach of contract and bad faith claims. Norfolk also moves for summary judgment on its crossclaim for breach of contract against C&K.

11

A.    <u>C&K's duties under the UIAA</u>

Maryland courts regard contract interpretation as a question of law. *Bayside Fire Prot., LLC v. Everest Indem. Ins. Co.*, 592 F. Supp. 3d 454, 463 (D. Md. 2022) (citing *White Pine Ins. Co. v. Taylor*, 165 A.3d 624, 631 (Md. 2017)).  They use the "objective approach" to interpret contracts. *Adventist Healthcare, Inc. v. Behram*, 322 A.3d 1, 14 (Md. 2024) (citations omitted); *XL Ins. Am., Inc. v. Lithko Contracting, LLC*, No. 0316, 2023 WL 6784245, at *7 (Md. Ct. Spec. App. Oct. 13, 2023), *aff'd*, 318 A.3d 1221 (Md. 2024). That means they "give effect to the plain meaning of the contract, read objectively, regardless of the parties' subjective intent at the time of contract formation." *XL Ins.*, 2023 WL 6784245, at *7.  That does not mean, however, that they "interpret contractual language in a vacuum." *Adventist Healthcare*, 322 A.3d at 14.  Instead, Maryland courts interpret contractual language "in context," considering "not only the text of the entire contract but also the contract's character, purpose, and the facts and circumstances of the parties at the time of execution." *Id.* at 14–15 (citations omitted).  Evidence about a contract's context does not, however, include "extrinsic or parol evidence of the parties' subjective intent, such as evidence of the parties' negotiations." *Lithko Contracting, LLC v. XL Ins. Am., Inc.*, 318 A.3d 1221, 1230–31 (Md. 2024) (citations omitted).  "Such evidence may be considered only after a court first determines that the relevant contract language is ambiguous, which occurs when, viewing the plain language in its full context, a reasonably prudent person could ascribe more than one reasonable meaning to it." *Id.* at 1231 (cleaned up).

Maryland courts also "attempt to construe the contract as a whole, interpreting separate provisions harmoniously, so that, if possible, all of them may be given effect." *Adventist Healthcare*, 322 A.3d at 15 (cleaned up).  In other words, Maryland courts will "avoid an interpretation which casts out or disregards a meaningful part of the language of the writing

unless no other course can be sensibly and reasonably followed." *Id.* (cleaned up). In sum, the overarching "bedrock principle of contract interpretation" for Maryland courts is that they seek "to interpret contracts in accordance with common sense." *Id.* (cleaned up).

When it comes to contractual indemnity, however, Maryland courts won't construe a contract "to indemnify a party against its own negligence unless the contract expressly or unequivocally states that this is the parties' intent." *Steamfitters Loc. Union No. 602 v. Erie Ins. Exch.*, 233 A.3d 59, 85 (Md. 2020); *Bd. of Trustees, Cmty. Coll. of Baltimore Cnty. v. Patient First Corp.*, 120 A.3d 124, 132 (Md. 2015). But the contract "need not contain or use the word negligence or any other magic words" to show such intent. *Bailey v. Queen's Landing Council of Unit Owners, Inc.*, No. 1244, 2023 WL 8047679, at *3 (Md. Ct. Spec. App. Nov. 21, 2023). Of note, Maryland courts don't apply this rule in the context of liability insurance because insuring against your own negligence is usually the point of those contracts. *Mass Transit Admin. v. CSX Transp., Inc.*, 708 A.2d 298, 303 (Md. 1998). Also, "Maryland does not follow the rule that insurance policies are to be most strongly construed against the insurer." *Nautilus Ins. Co. v. 200 W. Cherry St., LLC*, 383 F. Supp. 3d 494, 509 (D. Md. 2019).

Liability insurance is also the context in which issues frequently arise about the duty to defend and the duty to indemnify. An insurer's duty to defend and its duty to indemnify are distinct and separate concepts. *Id.* An "insurer's duty to defend is a contractual duty arising out of the terms of a liability insurance policy." *State Farm Fire & Cas. Co. v. Huguely*, 432 F. Supp. 3d 587, 592 (D. Md. 2020) (cleaned up). Whether there's a duty to defend depends on the facts as alleged in a complaint. *Nautilus Ins.*, 383 F. Supp. 3d at 509. The duty to indemnify, on the other hand, arises from the insured's obligation to pay a judgment and "is triggered only if the insured's *established liability* is *actually* covered under the policy." *Id.* Put differently, the duty to

13

indemnify "turns on a comparison of the ultimate findings of fact concerning the alleged occurrence with the policy coverage." *Nautilus Ins. Co. v. BSA Ltd. P'ship*, 602 F. Supp. 2d 641, 657 (D. Md. 2009). Because the duty to indemnify is based on factual findings, Maryland courts may defer ruling on the duty to indemnify until those factual findings are made or liability is otherwise determined. *Id.*

The language at issue here is in Section 4 of the UIIA. Starting with subsection (a), it says that C&K "agrees to defend, hold harmless and fully indemnify [Norfolk] (*without regard to whether [Norfolk's] liability is* vicarious, implied in law, or *as a result of the fault or negligence of [Norfolk]* . . ." (ECF No. 52-1 at PageID 619–20; ECF No. 55-1 at PageID 682.) C&K's promise to defend, hold harmless, and indemnify Norfolk broadly covers "any and all claims, suits, loss, damage or liability, for bodily injury, death and/or property damage (other than cargo loss, damage, or delay unrelated to a commercial motor vehicle accident involving [C&K] or theft of the cargo during the Interchange Period), including reasonable attorney fees and costs incurred in the defense against a claim or suit, or incurred because of the wrongful failure to defend against a claim or suit, or in enforcing subsection F.4 (collectively, the "Damages"), caused by or resulting from the [C&K]'s: use or maintenance of the Equipment during an Interchange Period; and/or presence on [Norfolk]'s premises." (ECF No. 52-1 at PageID 619–20; ECF No. 55-1 at PageID 682.) That language is clear and unequivocal: C&K agreed to defend and indemnify Norfolk, even when Norfolk's liability was due to its own fault or negligence. And the parties don't appear to disagree that this is what subsection (a) means. (*See* ECF No. 46-1 at PageID 469, "Without the exception [in F.4.b(i)], the indemnity agreement essentially would have required C&K to indemnity for [*sic*] Norfolk even for its own negligence.") But the prefatory language in subsection (a) provides that C&K's promise to defend and indemnify Norfolk is "[s]ubject to the exceptions

14

set forth in Subsection (b) below." And it's the meaning of subsection (b) and its effect on
subsection (a) that is at the heart of the parties' dispute.[3]

Specifically, under subsection (b), clause (i), the indemnity of subsection (a) does not apply
"to the extent Damages . . . occur during the presence of [C&K] on [Norfolk]'s premises _and_ are
caused by or result from the negligent or intentional acts or omissions of [Norfolk], [its] agents,
employees, vendors or third party invitees (excluding [C&K])." (ECF No. 52-1 at PageID 619–
20; ECF No. 55-1 at PageID 682.) According to Protective and C&K, this exception negates
C&K's duty to defend or indemnify Norfolk because Black's Third-Party Complaint alleges only
negligence claims against only Norfolk or its employees. (_See, e.g._, ECF No. 46-1 at PageID 469–
71; ECF No. 54 at PageID 658–59.) Not so says Norfolk. It asserts that C&K has a duty to defend
it because the fact finder may find that Norfolk was not at fault and not negligent, which would
mean subsection (b)'s exception wouldn't apply. (_See, e.g._, ECF No. 52 at PageID 608–10.)

As an initial matter, the language of the UIIA is plain and unambiguous. However, neither
party's interpretation gives effect to all parts of the disputed provision. The interpretation that
Protective and C&K advocate would nullify any defense or indemnity obligation based on
allegations alone despite the explicit language in subsection (a) that defense and indemnity are
provided without regard to whether Norfolk's liability is due to its own fault or negligence.
Protective and C&K fail to explain how their interpretation gives effect to the language of
subsection (a). On the other side, Norfolk similarly fails to grapple with the language at the
beginning of subsection (b) that its exceptions apply to the entire indemnity provision, including
the duty to defend. Because the parties' interpretations fail to give effect to all parts of the

---

[3] Subsection (b) contains two clauses with exceptions to C&K's promise to defend and
indemnify Norfolk in Subsection (a), but only the exception in the first clause is at issue here.

provision at issue, they are disfavored under Maryland law "unless no other course can be sensibly and reasonably followed." *Healthcare*, 322 A.3d at 15.

Instead of the two extremes advocated by the parties, the meaning of the disputed provision is a common-sense middle ground: C&K has a duty to defend and indemnify Norfolk, but both duties are contingent on whether Norfolk is found liable for the allegations in the Third-Party Complaint. Admittedly, this middle-ground interpretation is inconsistent with how Maryland courts interpret an insurer's duty to defend. But that's what the plain text of Section 4 says. The context is also different: C&K is not an insurance company; Norfolk did not pay C&K premiums[4]; and obtaining insurance coverage is not the primary purpose of the UIIA.[5]

But even if the Court applied the duty to defend as if the UIIA were an insurance contract, the end result is the same. An insurer's duty to defend turns on whether the claims are potentially within the policy's coverage. Put differently, the duty to defend is based on the insured's *potential liability*, *i.e.*, whether there is coverage under the policy if the insured is found liable as alleged. If there are alternative factual allegations, there's a duty to defend if any of the alternative versions fall within the policy's coverage. Rather than potential liability, Norfolk's interpretation of the duty to defend looks at the potential for *no liability*. Looking only at Norfolk's *potential liability*,

---

[4] "The dual promises to defend and indemnify the insured are the consideration received by the insured for payment of the policy premiums." *Selective Way Ins. Co. v. Nationwide Prop. & Cas. Ins. Co.*, 219 A.3d 20, 32 (Md. App. 2019) (citations and internal quotation marks omitted).

[5] Section A, entitled "Purpose," at the beginning of the UIIA provides as follows:

The Parties to this Agreement hereby acknowledge their respective responsibilities in one Party's access to the Premises of the other for the purpose of interchanging intermodal transportation Equipment and further establish the terms and conditions under which such intermodal Equipment will be used."

(ECF No. 63-1 at PageID 730.)

none of the claims in the Third-Party Complaint would be within the UIIA's indemnity provision. So C&K would not have a duty to defend Norfolk.

That conclusion, however, wouldn't mean that C&K was off-the-hook for Norfolk's attorneys' fees or other defense costs. Recall that in subsection (a), C&K promises to "hold harmless and fully indemnify" Norfolk, including for "reasonable attorney fees and costs incurred in the defense against a claim or suit, or incurred because of the wrongful failure to defend against a claim or suit, or in enforcing subsection F.4. . . ." (ECF No. 63-1 at PageID 737; ECF No. 52-1 at PageID 619–20; ECF No. 55-1 at PageID 682.) So even if there was no duty to defend, if Norfolk was ultimately found not liable for the claims in the Third-Party Complaint, then the exception in subsection (b) would not apply. Which means that C&K would be obligated to indemnify Norfolk for its attorneys' fees and defense costs pursuant to subsection (a).[6]

So no matter the track taken, the final destination is the same.[7] Whether C&K must pay for Norfolk's defense against the Third-Party Complaint turns on factual findings about Norfolk's liability that have not yet been made. The parties' cross-motions for summary judgment will therefore be denied to the extent they seek a declaration as to C&K's duty to defend Norfolk under the UIAA.

_____

[6] And again, Protective's motion impliedly recognizes this, too, by asking the Court to rule "that Norfolk must be found completely fault free in the [Third-Party Complaint] in order to entitled to reimbursement of its defense costs in the [Third-Party Complaint] under the unambiguous terms of the UIIA." (ECF No. 46-1 at PageID 471.)

[7] Under Maryland law, damages for the breach of a contractual duty to defend are "the insured's expenses, including attorney fees, in defending the underlying tort action, as well as the insured's expenses and attorney fees in a separate contract or declaratory judgment action . . . to establish that there exists a duty to defend." *Selective Way Ins. Co. v. Fireman's Fund Ins. Co.*, 289 A.3d 719, 748 (Md. 2023). In Section F.4 of the UIIA, C&K promises to indemnify Norfolk for those same things.

Next, what about the duty to indemnify?  The short answer is that, for the same reasons explained above, it is also contingent on factual findings about Norfolk's liability that have not yet been made.  The parties acknowledge that this might be the Court's conclusion, but they ask the Court to rule on the requisite extent of Norfolk's liability that would either trigger or defeat C&K's duty to indemnify.  Protective argues that Norfolk is entitled to indemnity under the UIAA only if Norfolk is found "completely fault free" for the claims in the Third-Party Complaint.  (*See* ECF No. 46-1 at PageID 471.)  Not surprisingly, Norfolk's position is the complete opposite.  It says that it is entitled to indemnity unless it's found to be "the sole cause of the underlying incident." (ECF No. 48 at PageID 500.)

Once again, the Court is not convinced either position is correct.  The specific language at issue is, "The foregoing indemnity provision shall not apply *to the extent* Damages . . . are caused by or result from the negligent or intentional acts or omissions of [Norfolk], [its] agents, employees, vendors or third party invitees (excluding [C&K])."  (ECF No. 63-1 at PageID 737; ECF No. 52-1 at PageID 619–20; ECF No. 55-1 at PageID 682.)  "Extent" means the point, degree, or limit to which something extends.  "Extent." *Merriam-Webster's Unabridged Dictionary*, Merriam-Webster, https://unabridged.merriam-webster.com/unabridged/extent (last visited 7 Mar. 2025), *archived at* https://perma.cc/3L3A-HWHH.  The phrase "to the extent" indicates that the exception is not meant to apply on an all-or-nothing basis, which counsels against Protective's asserted interpretation.  Similarly, there's nothing in the provision that indicates the parties intended the exception to apply only if Norfolk was solely liable.  Instead, the language suggests a limitation based on apportionment of fault like that done in a comparative fault analysis.

Maryland, however, has not adopted a comparative fault system, instead maintaining the doctrine of contributory negligence.  *See Iacobeti v. Weeks*, No. 23-CV-1758-ABA, 2024 WL

2188457, at *9 (D. Md. May 15, 2024) (citing *Harrison v. Montgomery Cnty. Bd. of Educ.*, 456 A.2d 894, 898 (Md. 1983) and *Coleman v. Soccer Ass'n of Columbia*, 69 A.3d 1149, 1155, 1158 (Md. 2013)).  The parties don't address whether this should affect interpretation of the language.  For now, though, it doesn't matter because there must first be a factual finding as to Norfolk's liability before the Court can rule on whether C&K has a duty to indemnify Norfolk.  The parties cross motions will be denied to the extent they seek a declaration as to C&K's duty to indemnify Norfolk under the UIAA.

## B.    <u>Protective's duties under the Policy</u>

Protective argues that it has no duty to defend and no "direct indemnity obligation"  under the Policy. The Court applies Illinois law to interpret the Policy.

In Illinois, as in Maryland, interpretation of an insurance policy is a question of law. *Citizens Ins. Co. of Am. v. Wynndalco Enterprises, LLC*, 70 F.4th 987, 995 (7th Cir. 2023).  The normal rules of contract interpretation apply, and the goal is to ascertain the intent of the parties "as expressed in the policy's language." *Id.* (citations omitted).  A policy's terms are given their ordinary meaning, and individual policy provisions are not construed in isolation, "but as a whole, giving effect to each and every provision whenever possible." *Id.* (citations omitted).

Starting with the duty to defend, Protective devotes part of its brief to explaining that it is an excess insurer under the Policy and that "primary and excess insurers insure different risks." (ECF No. 46-1 at PageID 473.)  Protective then cites several cases for the proposition that "courts have recognized that excess policies seldom provide a separate duty to defend."  (*Id.* (citations omitted).)

It's true that excess insurers generally take on less risk than primary insurers, "as they place reliance on the fact that the primary insurer will ordinarily be the one responsible for indemnifying most losses or paying defense costs." *Great Am. Ins. Co. v. State Farm Fire & Cas. Co.*, 104 F.4th

1011, 1016 (7th Cir. 2024).  But the type of insurance contract isn't necessarily dispositive for coverage issues.  No matter the type of insurance contract involved in the dispute, the court's role remains "to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.* (cleaned up).  The court is "not concerned with the labels," but instead on "what each insurer has agreed to cover in the respective policies." *Id.*  Nor does it matter what a typical primary or excess insurance policy provides because, "as with any other contract, the parties to an insurance agreement have the power to define the terms, including the limits of the defense obligations." *Id.* (citations omitted).

The Policy's plain language makes the analysis simple for the duty to defend.  Protective does not agree to defend the insured under the "Indemnity Agreements" portion of the Policy, nor does Protective undertake a duty to defend the insured anywhere else in the Policy.  Just the opposite in fact.  The Policy specifically says that the insured must pay all costs, settle or defend all claims, and conduct the defense and appeal in all actions, suits and proceedings commenced against it.

The duty to indemnify, however, isn't as straightforward.  In the "Indemnity Agreements," Protective agrees to indemnify only the named or related insured, and Norfolk is neither. Protective also says that the Policy doesn't require direct payment to Norfolk for any indemnified obligations, but instead, C&K must pay all amounts due to Norfolk, with Protective then reimbursing C&K.  But that provision is contained in the *definition* of "additional insured," and it also says that C&K is to make such payments to Norfolk "*as and when requested*" by Protective. So even though the funds may not come out of Protective's bank account, the Court is not convinced that Protective is entirely obligation free when it comes to any duty to indemnify that C&K may owe to Norfolk under the UIIA.

To sum it up:  Protective does not have a separate duty to defend Norfolk under the Policy.
Whether Protective has an obligation to indemnify Norfolk under the Policy by directing C&K to
pay Norfolk for C&K's liability for defense and indemnity under the UIIA is contingent on factual
findings that have not yet been made.

**C.**    **Norfolk's breach of contract claims against C&K and Protective**

First, as explained above, C&K's duties to defend and indemnify under the UIIA are
contingent on factual findings that have not yet been made.  Norfolk's motion will be denied as to
its breach of contract crossclaim against C&K.

Second, the Policy does not include a duty to defend.  And any duty Protective may have
to defend or indemnify Norfolk under the UIIA is "derivative of C&K's duty to defend and
indemnify" under the UIIA.  (*See* ECF No. 9 at PageID 120.)  Norfolk's motion will be denied as
to its breach of contract counterclaim against Protective.

Finally, Protective's duty to indemnify Norfolk, either directly or indirectly through C&K,
is also contingent on factual findings that have not yet been made.  And the Policy does not include
a separate duty to defend.  Protective's motion will be granted as to Norfolk's breach of contract
counterclaim.

**D.**    **Norfolk's breach of the duty of good faith claim against Protective[8]**

As explained above, Protective has not breached any contractual duty to Norfolk as this
juncture due to the contingent nature of the duties to defend and indemnify and the lack of any
standalone duty to defend in the Policy.  So, at this point, there is no cognizable claim for bad faith.

---

[8] Protective previously filed a motion to dismiss in this matter that sought dismissal of
Norfolk's bad faith claim against it.  (*See* ECF No. 28).  Norfolk responded in opposition (ECF
No. 33), and Protective filed a reply in support (ECF No. 24).  Because the Court has not ruled on
Protective's motion, the Court has read and considered these briefings as part of its consideration
of the issue on summary judgment.

Also, the Tennessee Supreme Court declared early on that the bad faith statute applies only to insurance contracts that "bear interest from the time they become due, regardless of whether a judgment was recovered on them or not," such as contracts for "life insurance, fire insurance and accident insurance." *Tennessee Farmers Mut. Ins. Co. v. Cherry*, 374 S.W.2d 371, 372 (Tenn. 1964); *see also Peoples Bank & Trust Company v. United States Fidelity & Guaranty Co.*, 3 S.W.2d 163 (Tenn. 1927). Although more recent cases from the Tennessee Supreme Court have called into question the continuing validity of *Cherry*, it has never been expressly overruled. *See Giles v. Geico Gen. Ins. Co.*, 643 S.W.3d 171, 179–84 (Tenn. Ct. App. 2021); *For Senior Help, LLC v. Westchester Fire Ins. Co.*, 515 F. Supp. 3d 787, 800 & n.7 (M.D. Tenn. 2021). In *Giles*, the Tennessee Court of Appeals thoroughly recounted the history of the bad faith statute and the cases interpreting it and concluded that *Cherry* remained controlling precedent. *Giles*, 643 S.W.3d at 184.

This Court previously found the reasoning of *Giles* to be convincing on this issue. *See Crestbrook Ins. Co. v. Crosby*, No. 2:22-CV-2406-MSN-ATC, 2023 WL 3767085, at *15–19 (W.D. Tenn. June 1, 2023). Norfolk has not shown that either the UIIA or the Policy are the type of contract that bears interest "prior to any judgment secured thereon." *Cherry*, 374 S.W.2d at 394.

For all these reasons, Norfolk's motion will be denied as to its bad faith claim and Protective's motion will be granted.

## OTHER PENDING MOTIONS

**A.**    **Protective's Motion to Dismiss (ECF No. 28)**

Protective's motion sought dismissal of Norfolk's bad faith claim under Federal Rule of Civil Procedure 12(b)(6).  The Court has now granted Protective summary judgment on this claim. Protective's Motion to Dismiss will be denied as moot.

**B.**    **Norfolk's Motion for Leave to File Sur-Response (ECF No. 35)**

In this motion, Norfolk sought to file a sur-response to Protective's reply in support of its Motion to Dismiss.  Norfolk contended that the sur-reply was necessary to "further expand upon the procedural history of the underlying lawsuit," even though it agreed "with Protective that this issue is not ultimately dispositive of the issues raised in Protective's Motion . . . ."  (ECF No. 35 at PageID 377.)  Protective's reply did not raise any new legal arguments or evidence, so a sur-reply was not necessary, especially on an issue that Norfolk agreed was not dispositive of the motion.  And Protective's Motion to Dismiss has now been denied as moot, and Norfolk was able to "further expand on the procedural history of the underlying lawsuit" in its summary judgment motion and response to Protective's summary judgment motion.  Norfolk's Motion for Leave to File Sur-Response will be denied as moot.

**C.**    **Norfolk's Motion to Serve Additional Discovery and Extend Deadline for Dispositive Motions (ECF No. 41)**

In this motion, Norfolk sought to serve additional discovery regarding communications between C&K and Ronald Black and his counsel, as well as communications between C&K and its own counsel, about C&K's reported efforts to settle Ronald Black's claims against Norfolk in the Third-Party Complaint.   (ECF No. 41 at PageID 441.)   Norfolk asserted that the communications "would reflect some attempt to indemnify Norfolk Southern as to claims brought by Ronald Black," so they were relevant to whether Protective and/or C&K owed a duty to defend

or indemnify Norfolk for the Third-Party Complaint. (*Id.* at 441–42.) Norfolk also sought an extension of the dispositive motion deadline until 60 days after the Court entered an order granting its motion. C&K opposed the motion and asserted that all such communications were protected by multiple privileges, including the attorney-client privilege and statements made in furtherance of settlement negotiations. (ECF No. 45 at PageID 453–56.) The Court did not rule on Norfolk's motion prior to the dispositive motion deadline, which effectively denied it.

Putting aside the issues about whether this evidence was subject to a privilege and not discoverable, the Court would have been able to consider such extrinsic evidence only if it had found the UIIA to be ambiguous. *Lithko Contracting*, 318 A.3d at 1230–31. But the Court has found that the language of the UIIA was not ambiguous. And even more notably, none of the parties—including Norfolk—argued that it was ambiguous. Nor did Norfolk's response to Protective's motion for summary judgment assert that it could not present facts essential to justify its opposition to the motion pursuant to Federal Rule of Civil Procedure 56(d).

For all these reasons, Norfolk's motion will be denied as moot.

## <u>CONCLUSION</u>

For the reasons set forth above, Protective Insurance Company's Motion for Summary Judgment (ECF No. 46, "Protective's Motion") and Defendant Norfolk Southern Railway Company's Motion for Summary Judgment (ECF No. 47, "Norfolk's Motion") are **DENIED** as to declarations sought about whether C&K owes a duty to defend or indemnify Norfolk for the claims in the Third-Party Complaint under the UIIA. As explained above, C&K's duties to defend and indemnify Norfolk for those claims are contingent on factual findings that have not yet been made.

Second, Norfolk's Motion is **DENIED** as to its counterclaims for breach of contract and bad faith, and Protective's Motion is **GRANTED** as to Norfolk's counterclaims for breach of contract and bad faith.

Third, Norfolk's Motion is **DENIED** as to its crossclaim for breach of contract against C&K.

Finally, Protective's Motion to Dismiss (ECF No. 28), Norfolk's Motion for Leave to File Sur-Response (ECF No. 35), and Norfolk's Motion to Serve Additional Discovery and Extend Deadline for Dispositive Motions (ECF No. 41) are **DENIED AS MOOT**.

**IT IS SO ORDERED**, this 7th day of March, 2025.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE